BRUCE's Adm'rs. vs. SMITH.

APPEAL from *Allegany* County Court. This was an action of trespass *vi et armis*, against the appellant's intestate, for seizing and taking certain negro slaves, the property of the plaintiff, (now appellee,) and converting them, &c. Plea, the general issue.

1. On the trial the plaintiff produced to the court and jury a certified copy of a bill of sale, from *Charles F. Brodhag* to him the plaintiff, both of *George-Town*, in the county of *Washington*, and district of *Columbia*, dated the 26th of December 1804, for sundry negro slaves, to secure the payment of $3100, with interest, on or before the 26th of December 1805, due to *C. C. Jones*, and if not paid at that time, the said *Smith* to make sale of the said negro slaves, &c. The bill of sale was acknowledged the 26th of December 1804, before two justices of the peace of the said county of *Washington*, and recorded in the records of that county on the 10th of January 1805, and certified under seal by the clerk of the circuit court of the district of *Columbia* for said county, to be truly taken from the land records for said county; also certified by the chief judge of the circuit court of said district, that the attestation by the clerk, &c. was in due form; and also certified, under seal, by the clerk aforesaid, that the chief judge, who certified as aforesaid, was duly commissioned and qualified. To the reading of this bill of sale to the jury, the defendant objected. But the Court, [*Buchanan*, Ch. J.] was of opinion that the same was legal evidence, and permitted it to be read as such. The defendant excepted.

2. The plaintiff then offered evidence to prove, that the defendant, as sheriff of *Allegany* county, on the 7th of August 1809, seized and sold the goods and chattels mentioned in the plaintiff's declaration; and that the goods and

A bill of sale executed by C B to C S, both of *Washington* county, in the district of *Columbia*, on the 26th of December 1804, for sundry slaves, to secure the payment of a debt due to C J, and acknowledged on the same day before two justices of the peace of that county, and recorded on the 10th of January 1805 in the records of said county—*Held*, that a copy thereof, certified under the seal of the court by the clerk of the circuit court of the said district for said county, with the certificate of the chief judge of said court, that the attestation was in due form; and also a certificate by said clerk, under the seal of the court, that the said chief judge was duly commissioned and qualified, was legal evidence.

C B executed a bill of sale of sundry slaves to C S, to secure the payment of a debt *bona fide* due, C B and C S being both at that time residing in the county of *Washington*, in the district of *Columbia*, which bill of sale was duly executed, acknowledged and recorded, agreeably to the laws of that part of the district, and which were the same as the laws of this state. C B afterwards removed into this state, bringing with him the slaves, which had remained in his possession, and over which he exercised acts of ownership, paid the county assessment thereon, and sold some of them, C B, before and after his bill of sale to C S, was indebted to F D, of the said county and district, who recovered a judgment against C B, in *Allegany* county court in this state, to which county C B had removed with the said slaves. Upon this judgment a writ of *fieri facias* issued, and the said slaves were taken and sold by the sheriff, against whom C S brought an action of trespass *vi et armis*, &c.—*Held*, that C S was entitled to recover, there being no proof to impeach the validity of the bill of sale, or contaminate the transaction with fraud, nor that the property transferred was more than sufficient to pay the debt intended to be secured.

It is the right of a debtor to give preference to one of his creditors by a fair and honest transfer of his goods adequate to the payment of his debt.

The retaining, by the grantor, possession of property included in a bill of sale duly executed, acknowledged and recorded, is sanctioned by the act of 1729, ch. 8.

chattels, so seized and sold, were the same mentioned in the aforesaid bill of sale. The defendant then offered in evidence the record of a judgment obtained in *Allegany* county court, by *Leonard M. Deakins* and *John Hoye*, executors of *Francis Deakins*, against *Charles F. Brodhag*, at April term 1809, for $1000 current money, damages and costs, to be released on payment of $658 86, with interest thereon from the 13th of February 1805. Also the execution issued on the said judgment on the 7th August 1809, and directed to the sheriff of *Allegany* county, returnable on the second Monday of October then next, and returned "made and satisfied plaintiff. *W. Bruce Shff.*" The defendant then proved, that the said execution came to his hands as sheriff, and that by virtue thereof he seized and took the goods and chattels, for the taking of which the suit was brought. The defendant also offered evidence to prove, that *Charles F. Brodhag* in 1804, and until they were taken by the defendant, was in possession of the said goods and chattels. That *Brodhag* was assessed and charged on the books of the commissioners of the tax for *Allegany* county for 1804, 1806, 1807, 1808, 1809 and 1810, for the same. The defendant also offered evidence to prove, that in the spring of 1805 *Brodhag* removed from *George Town*, in the district of *Columbia*, to *Allegany* county, when he brought with him the said goods and chattels, and that the said *Brodhag* from that time, to the taking thereof by the defendant, was in possession thereof. The defendant also offered evidence to prove, that before and after the 26th of December 1804, *Brodhag* was indebted to *Leonard M. Deakins* and *John Hoye*, executors of *Francis Deakins*, who resided in the county of *Washington*, and district of *Columbia*, and that *Brodhag* was in possession of one of the negroes mentioned in the said bill of sale, until sometime in March 1813, at which time he died; that *Brodhag* was also in possession of another of the said negroes until sometime in April 1812, when he sold the same. Upon these facts the defendant prayed the direction of the court to the jury, that if they found from the evidence that *Charles F. Brodhag* was indebted to *Leonard M. Deakins* and *John Hoye*, executors of *Francis Deakins*, before and after the execution of the said bill of sale to the plaintiff, on the 26th of December 1804, and that *Brodhag* held the possession of the property mentioned in said bill of sale

from the date thereof until the execution of the writ of *fieri fucias* by the defendant, that then the plaintiff was not entitled to recover. This direction the court refused to give. The defendant excepted.

3. The defendant then prayed the opinion of the court to the jury, that if from the evidence they found that *Charles F. Brodhag* was in possession of the goods and chattels claimed by the plaintiff at the time of the execution of the deed to the plaintiff on the 26th of December 1804, and that *Charles F. Brodhag* continued in possession thereof until the 7th of August 1809, when they were seized and taken by the defendant, under and by virtue of the judgment and execution aforesaid, and that the plaintiff never was in possession thereof, that the plaintiff was not entitled to recover. This direction the court also refused to give. The defendant excepted; and the verdict and judgment being against him, he appealed to this court; and having died pending the appeal, his death was suggested, and his administrators were made parties.

The cause was argued before CHASE, Ch. J. and EARLE, and JOHNSON, J.

*Magruder*, for the Appellants. From the facts stated in the bills of exceptions, it appears that the plaintiff in the court below claimed the negroes under a deed executed to him by *Brodhag* in 1804, by which he was authorised to make sale of the negroes on the 26th December 1805, for the payment of a debt due to a third person, if not paid by that day; that the plaintiff permitted *Brodhag* to remain in the peaceable possession of the negroes, to exercise every act of ownership over them, and to use them as his absolute property, to remove them into this state, and to make sale of them, and made no claim to them until the institution of this suit in 1811, (almost six years after he was directed to sell, when they had been seized as the property of *Brodhag* to satisfy a judgment due to *Deakins's* administrators. The plaintiff claims under a deed acknowledged and recorded in the district of *Columbia*. *Brodhag* at the time was indebted to *Deakins*. This sale was void against creditors at the time by act of 1729, ch. 8, sect. 5. *Brodhag* was permitted to hold and exercise every act of ownership over the property, nearly five years after the plaintiff was authorised, and it was his duty to sell the property, if the

1814.

Bruce
v.
Smith

debt was not paid. This of itself was evidence, that the debt was paid by the bill of sale originally executed to protect the property against creditors. If the deed was not executed with a fraudulent intent, and the debt thereby intended to be secured was not satisfied on the day mentioned in the deed, the possession of *Brodhag* afterwards was inconsistent with the deed. *Hamilton vs. Russell*, 1 *Cranch*, 316. *Edwards vs. Harben*, 2 T. R. 587; in which it is determined, that all such deeds, if the possession does not accompany and follow the deed, the deed is fraudulent and void as to creditors. In these cases, it is true the deed purported to be an absolute transfer, whereas *Brodhag's* deed was conditional. But this became absolute upon the arrival of the day of payment. To suffer *Brodhag* afterwards to keep possession, exercise every act of ownership over the property, and in every respect to use it as his own, would be sufficient to make the deed fraudulent and void as to creditors. In *Edwards vs. Harben*, Judge *Buller* takes the distinction between deeds to take place immediately, and to take place at a future time. In the latter case "the possession continuing with the vendor, till such future time, or the performace of the condition, is consistent with the deed." If a deed, executed and recorded in the district of *Columbia*, could be received in evidence in a case like this, then the object of our act of assembly, to prevent secret sales, would be defeated. If such a deed could be used after suffering the grantor to keep the possession of the property in this state four or five years as his own absolutely, no creditor could be secure. Fraud may be committed with impunity, if a conditional deed will authorise the party making it to hold the property for any length of time. In order to secure his property, and protect it against creditors, a man in debt has nothing to do but to convey it to some person whom he might style a creditor, (for there is no proof, except the deed, of any money being due to *Jones*,) and who might, as in this case, refuse to sell for payment of the debt, and refuse to let the claims of other creditors be paid out of the property. It is contended, that the deed executed in the district of *Columbia*, could not be used, and ought not to have been admitted in evidence to establish the plaintiff's right to this property, and after the long possession of the property by *Brodhag*, the plaintiff could not recover.

No Counsel argued for the Appellee.

Chase, Ch. J. delivered the opinion of the court. The court concur in the opinion given by the court below in the *first* bill of exceptions.

The bill of sale has all the solemnities prescribed and required by the act of assembly of 1729, *ch.* 8, to give it validity and operation in the case in which goods and chattels are intended to be transferred, and the possession is retained by the grantor. The copy offered is legal and competent evidence of the bill of sale, the laws of this state having been adopted in that part of the district of *Columbia* ceded by this state, and comprehended within the county of *Washington.*

The court concur in the opinions expressed by the court below in the *second* and *third* bills of exceptions; there being no facts stated to impeach the validity of the bill of sale, or contaminate the transaction with fraud. The circumstances that the grantor was indebted to *Francis Deakins* at the time of the obtaining the bill of sale, and the retention of the possession by the grantor, of the negroes for which the action was instituted, cannot taint the transaction with fraud or collusion to defeat a creditor of his just claim by covering the property by the bill of sale. It is the right of a debtor to give preference to one of his creditors by a fair and honest transfer of goods and chattels, adequate to the payment of his debt; and there are no facts stated to prove that the property transferred was more than sufficient to pay the debt intended to be secured, nor is there proof of any collusion between the grantor and grantee to cover the property remaining, from the claims of the other creditors of the grantor, after the debt of *Jones* was satisfied. The retaining the possession by the grantor is sanctioned by the act of assembly, and the bill of sale cannot be invalidated or impeached by it.

JUDGMENT AFFIRMED.

