SAMUEL B. ANDERSON AND OTHERS,
vs.
ROGER TYDINGS AND OTHERS.
} SEPTEMBER TERM, 1852.

[FRAUDULENT CONVEYANCES, VACATING OF, ETC.]

AT common law, a debtor may secure one creditor to the exclusion of others, either by payment, or a *bona fide* transfer of his property.

Where a deed was executed upon a moneyed consideration of $144, which was paid to the grantor, this constitutes it a deed of bargain and sale, and it may be supported, by showing that it was caused to be made by the grantor, in satisfaction of a debt due from him of an amount equivalent to the value of the property conveyed, this being a consideration, *ejusdem generis*, with that stated in the deed.

When a deed purports to be made for a moneyed consideration, it cannot be shown that money did not constitute the consideration, because that would be to change the character of the deed from a bargain and sale to a covenant to stand seized to the use of the grantee.

When a deed is charged to be fraudulent, and when the consideration stated in it has not been disproved, evidence of collateral circumstances showing an additional consideration not expressed in the deed, may be received to repel the charge of fraud.

In this case, a deed was executed to a married woman, for the consideration of $144, paid to the grantor by the husband. This deed was impeached by the creditors of the husband, on the ground that it was executed in fraud of their rights. HELD—that it was competent, in order to meet this charge of fraud, to show that the motive which induced the husband to direct the deed to be executed to his wife, was to satisfy the claims of one of his creditors.

To support a deed against the claims of creditors, it must not only be founded on a good or valuable consideration, but it must also be *bona fide ;* but when founded on a valuable consideration, the party assailing it must show affirmatively that the design was fraudulent.

But a party seeking relief against such a conveyance, need not produce direct evidence of an agreement to defraud the creditors of the grantor; he may prove the fraudulent design by circumstances.

[The bill in this case was filed by the creditors of Roger Tydings, to vacate a deed executed by Thomas R. Beard, and wife, to Mary Ann Tydings, wife of the said Roger, as fraudulent as against them. The deed is dated the 8th of January, 1848, and purports to be for the moneyed consideration of $144.

The bill alleges the indebtedness of said Roger to the complainants, and avers that at the time of their trusting him, he was owner of a certain parcel of land, which he had purchased of said Thomas R. Beard, and on which he had erected a valuable dwelling-house, store-house, and other buildings, with his own labor and money, whereby the property had become greatly enhanced in value, but at that time had not obtained a deed therefor; that complainants trusted him on the faith and credit of said property, of which he was so possessed; that owing to said Beard a small balance of the purchase-money, viz. $144, and being pressed by complainants for payment of their debts, by false and fraudulent representations, and with a view and for the purpose of hindering and delaying them and his other creditors from collecting their just debts, and to cheat and defraud them out of the same, induced the said Thomas R. Beard to convey said property to Mary A. Tydings, his wife, which was accordingly done. That said Roger has no other property out of which complainants could make their debts, or, if any, of very small value.

The answer of Tydings admits his indebtedness to complainants, as charged in the bill, but avers that since the year 1840, he had been indebted to John F. and Benjamin S. Nicholson, in the sum of between $500 and $600; and about the time of the conveyance in question, said Nicholsons being indebted to their mother, Mrs. Elliott, who was also the mother of respondent's wife, in the sum of $500, with interest from the year 1840, proposed to respondent to pay their debt to their mother, in payment of respondent's debt to them. Respondent was unable to do so, and offered instead, to convey said lot to them, in payment thereof; said Nicholsons would not agree to that arrangement, but said that their mother, Mrs. Elliott, would agree to have the money invested in the purchase of the lot for respondent's wife, if respondent would agree to that arrangement, and have the conveyance made. Respondent afterwards saw, and spoke with Mrs. Elliott on the subject, and she agreed to the proposition made by said Nicholsons. It was accordingly made, and the convey-

ance was with the consent of respondent, and with the knowledge of his wife. He has, therefore, ever considered his wife as a purchaser for a full consideration, for he alleges that the said lot and improvements were certainly not worth at that time more than the debt due to Mrs. Elliott, if as much.

He denies all fraud, or fraudulent purpose or intent; avers that he was perfectly willing to have conveyed the lot to the Nicholsons, in payment of his debt to them, and agreed to have it conveyed to his wife, in payment of said Nicholsons' debt to Mrs. Elliott, just as he would have agreed if she had demanded it, to convey the same to her. That he considered himself as paying a just debt to Mrs. Elliott, and on her agreeing to the conveyance to his wife, he did not consider his situation, purpose, or act, in any way altered or changed.

He admits that he did pay to Beard the purchase-money with his own labor and money, and built the improvements thereon in the same manner; and that his wife paid no part of the same, except in the manner above stated; that he has never exercised any control over said property, except with the consent and approbation of his wife, as her mother's money was applied to the purchase thereof. He admits that he has no property, except a very small amount of furniture, worth about $10.

Proof was then taken, the purport of which is sufficiently stated in the opinion of the Chancellor.]

THE CHANCELLOR:

The principle of course is not, and cannot be, disputed, that at common law, and independent of our insolvent laws, a debtor may secure one creditor to the exclusion of others, either by payment or a *bona fide* transfer of his property, *Hickley* vs. *The Farmers and Merchants' Bank*, 5 G. & J., 377; *Cole* vs. *Albers and Runge*, 1 Gill, 412.

The deed in this case is not assailed upon the ground that it was made, or caused to be made, under an expectation of taking the benefit of the insolvent laws, and with intent thereby to give an undue and improper preference to one creditor to

the prejudice of others ; nor could it be assailed on any such ground because *Tydings* the debtor has not in fact applied for release under the insolvent laws, and there is no person in existence who can impeach his acts as in violation of them.

If, therefore, the deed in this case can be successfully attacked, it must be upon the ground, that either at common law or under the provisions of the statute of 13 *Elizabeth, ch. 5,* it is void, as having been made to delay, hinder, and defraud creditors.    The allegation of the bill is " that said deed was concocted and executed with the sole view and purpose of cheating and defrauding the complainants of their claims against said *Tydings,* and hindering, delaying, and embarrassing them and his other creditors in the collection of their debts," &c.

Had this deed been a voluntary one, founded merely upon natural love and affection, it could not possibly be allowed to stand in the way of the creditors of the husband, as the agreement filed on the 26th of July last shows that he had no other property from which the claims of his creditors could be satisfied.    It would, therefore, upon the most indulgent view of the statute, or of the common law, be fraudulent and void as to creditors, and would unhesitatingly be set aside at their instance.

But the answers take the position, and the evidence maintains it, that this deed rests upon a valuable consideration ; that is, that it was caused to be executed by the party having the equitable title in satisfaction of a debt due from him, of an amount equivalent to the value of the property.    It is said, however, that this evidence is inadmissible, because the deed purports upon its face to have been executed for the consideration of the sum of one hundred and forty-four dollars paid by the grantee to the grantors ; and that it being shown that no such sum was paid by the former, it is not competent to support the deed by proof of the consideration relied upon in the answers.    The consideration stated in the deed was, however, paid to the grantor by *Tydings* the husband, and, therefore, being founded upon a moneyed consideration it is good as a deed of bargain and sale.

It is not like the cases of *Hurn* vs. *Soper* and *Betts* vs. *The Union Bank*, relied upon in the argument, in which it was decided that when a deed purports to be made on a moneyed consideration, it cannot be shown that money did not constitute the consideration, because that would be to change the character of the deed from a bargain and sale to a covenant to stand seized to the use of the grantee, a principle which will be found upon examination to have controlled the decision in 2 *Peere Wms.*, 204, referred to by the complainant's counsel. The case is not one of that description. The consideration attempted to be shown here is *ejusdem generis* with that stated in the deed. It is money paid to the use of the party holding the equitable title and at his instance and request, and it is the same thing precisely as if it had been paid to him.

The deed here has not been impeached by showing that the consideration expressed in it was not paid. In point of fact it was paid. But it is urged that it was paid by *Tydings* the husband, and the property conveyed, should, it is insisted, be accessible to the claims of his creditors ; and the alleged fraud consists in having the deed executed to his wife, thus putting it out of their reach.

The proof offered, and to which objection is made, is to meet this imputation of fraud. The object is not to change the character of the deed, but to show that the creditors of the husband have no right to complain, because the motive which induced him to direct the deed to be executed to his wife was one which the law allows ; that is, to satisfy the claim of one of his creditors.

The principle settled by the Court of Appeals in the case of *Claggett and Hall* vs. *Hall*, 9 *G. & J.*, 80, appears to me to warrant the introduction of this proof for the purpose for which it is offered. It is there said, that when a deed is charged to be fraudulent, and when the consideration stated in it has not been disproved, evidence of collateral circumstances showing an additional consideration not expressed in the deed, may be received to repel the charge of fraud. The observations of the judge who delivered the opinion of the Court, on

page 91, seem to be conclusive upon the question. I should therefore think, even if formal exceptions to the admissibility of this proof had been filed according to the Act of Assembly, it would be admissible.

But it is said, and the rule is clear, that to support a deed against the claims of creditors it must not only be founded on a good or valuable consideration, but it must also be *bona fide.* 1 *Story's Eq.*, secs. 353, 369. And it is urged that the deed in this case was made, or procured to be made, with intent to defraud and defeat creditors, and that therefore though a good and adequate consideration may have been paid for it, is void under the statute, and *Twyne's case,* 3 *Coke's Rep.,* 81, and the cases maintaining the same doctrine have been referred to in support of this position.

There is no doubt of the truth of the position, and that a valuable and full consideration will not protect a transaction, if the intent was a fraudulent one. This is clearly shown by the cases cited in sec. 369 in 1 *Story's Eq.*, 363; but when a conveyance or transfer of property rests upon a valuable consideration, it is not open to impeachment unless the party assailing it can show affirmatively that the design was fraudulent. There can be no question to be sure that such design may be exposed by circumstances, and that the party seeking relief against a conveyance need not produce direct evidence of an agreement to defraud the creditors of the grantor. In *Worseley* vs. *De Mattos,* 1 *Burr.,* 474, 475; and in *Twyne's case,* the deeds were declared void because the grantors were allowed to remain in the possession and use of the property as their own, by means whereof they enjoyed a credit to which they were not entitled and were enabled thereby to deceive and defraud others who dealt with them, because of their possession and enjoyment of the property which had been conveyed. But in the case now before this Court, the credit was given to *Tydings* before the date of the conveyance, and therefore there is no ground for charging collusion between the parties, to deceive third persons by holding out *Tydings* to the world as the owner of the property conveyed. Besides this deed,

which was executed on the 8th of January, 1848, was recorded on the same day, thus giving constructive notice to all the world of its contents. It is the case, then, simply of a party indebted to several, and securing one, of his creditors to the exclusion of others, a thing which at common law and apart from the insolvent laws he had a perfect right to do, and which the preferred creditor had an undoubted right to call upon him to do. And as soon as the transfer was made the conveyance was enrolled among the public records of the county that all persons having an interest in knowing might be apprised of the condition of the title.

In addition to all this, there is not a particle of evidence that either *Mrs. Elliott,* whose money paid for the property, or *Mrs. Tydings,* to whom the conveyance was made, knew of the indebtedness of *Roger Tydings,* to the complainants, without which knowledge there can of course be no pretence for imputing to them the design to injure the complainants; though I am very far from being of opinion that such knowledge, even if it existed, would have rendered their conduct in taking the conveyance iniquitous.

The deed, therefore, in my opinion must be permitted to stand; and as the complainants can reach *Roger Tydings'* interest as tenant by the courtesy, by an execution at law (if he is entitled to such interest), this Court should not interfere and, grant relief to that extent. The bill, therefore, will be dismissed.

HENRY M. MURRAY and FRANK H. STOCKETT, for Complainants.

CORNELIUS McLEAN, for Defendants.