(Decided December 3rd, 1862.)

---

JAMES ARMSTRONG and others, *vs.* PRISCILLA FAHNESTOCK and others.

Notice of the dissolution of a partnership, duly published, was in the following words : "B having disposed of his interest in the firm of 'A & B' to A, the firm is this day dissolved. A assumes all liabilities of the old firm, and for such purposes will use its name, and to whom all debts due the firm will be paid." A having afterwards executed a deed of trust to secure the debts of certain of his creditors, a bill was filed by others of them to set aside the deed as void, on the ground, among others, that there was no sufficient transfer in writing by B to A, to authorize A to deal with the effects and assets of the old firm as his individual property, and to convey it in trust, &c. HELD :

1st. That the original paper, from which said notice was copied, if treated as a *bona fide* assignment, was sufficient as a written transfer or assignment to A of all of B's interest in the partnership effects.

2nd. That the allegation in the bill of complaint, that "A had purchased out all the rights of B in the said firm," is sufficient to estop the complainants from controverting that fact in a subsequent stage of the proceedings.

3rd. That the mere circumstance of the inability of the retiring partner to pay his debts, cannot render such a transfer fraudulent; nor will the in-

solvency of the firm at the time of the dissolution and assignment of the retiring partner's interest to the continuing partner, vitiate the transfer, or prevent the property from becoming the individual property of the continuing partner.

This is an appeal from an order of the Circuit Court for Baltimore city, dissolving an injunction. The bill which was filed by the appellants, seeks to set aside a deed made by Jacob Ayres to Priscilla Fahnestock, on the 31st day of December 1857, as fraudulent and void against creditors. A prior deed had been made by Jacob Ayres & Co., on the 28th day of December 1857, and the second deed recites that it was executed because the grantee had been advised that the first was defective.

The last deed conveys to Priscilla Fahnestock "all and singular the goods and chattels, choses in action and sums of money hereinafter described; that is to say, all the stock of groceries and other effects now in the store occupied by me, No. 123, 124, on Pratt street, in Baltimore city; also all the household furniture and kitchen utensils, including a forte-piano, now being in the house occupied by me as a residence, No. 158 Lombard street. Also all my right, title and interest as settling partner of Jacob Ayres & Son, or otherwise, in and to all book-accounts or choses in action due or to become due to the late firm of Jacob Ayres & Son, or to the firm of Jacob Ayres & Co., and particularly to a claim or cause of action now pending in the Circuit Court of Prince William county, Virginia, in which said Jacob Ayres and Henry H. Ayres, trading as Jacob Ayres & Son, were complainants, and William Clary and others defendants," &c. "And also of, in and to all and singular the promissory notes, and bills of exchange and bonds now held by the undersigned, in any manner, either as an individual or as a co-partner, as aforesaid."

From the pleadings and evidence in the case, it appears that three different firms, consecutively, carried on the gro-

cery business in the same store. The first was Ayres and Sewell, which was dissolved by the death of Sewell, about the year 1842. A partnership was then formed between Jacob Ayres and his son, Henry H. Ayres, which commenced business under the name and style of Jacob Ayres & Son, in June 1842. This firm was also dissolved in February 1857, after which Jacob Ayres continued to do business under the style and firm of Jacob Ayres & Co.

The bill charges that said deeds are voluntary and without valuable consideration, and were executed with intent to hinder, delay and defraud the complainants, and all other *bona fide* creditors of said Jacob Ayres & Son, Jacob Ayres & Co., and Jacob Ayres; that under said deeds the said Priscilla had accordingly taken possession of the stock of goods described therein, was disposing of the same, and was reducing into possession the choses in action of the said grantor, and this without having given the bond required by law; and concludes by praying for an injunction against the said Priscilla, and the appointment of a receiver. The injunction was accordingly issued.

Short copies of judgments obtained by the complainants against Jacob Ayres, were filed as exhibits; also the two deeds from Jacob Ayres to Priscilla Fahnestock.

The answers of the defendants deny all manner of fraud; insist that the debts intended to be secured were not fictitious, but actually and fairly due, that they consisted of money lent to Jacob Ayres & Son, and Jacob Ayres & Co., by Priscilla Fahnestock, Sedonia Coleman, and Elizabeth Ayres, out of their own separate funds, and were, in fact, the borrowed capital upon which the business of the said firms had been mainly conducted. The following opinion of the Court below, (KREBS, J.,) to which this Court refer for the reasons of their decision, is so full in its references to the pleadings and evidence, as to render any further statement of the case unnecessary:

"At the hearing, the charge in the bill of complaint, that the debts intended to be secured by Jacob Ayres to his daughters, were pretended debts, and that the said deed was voluntary and without consideration, was abandoned, and it was admitted that he was justly indebted to them in or about the respective sums mentioned in the said deed; but the complainants insisted that they, as, or so far as they were, the creditors of the firm of Jacob Ayres & Son, were, under the general prayer of the bill, entitled to the relief prayed, because the property and effects so transferred to the said trustee, had been, and still continued to be, in her hands, the partnership property and assets of the said dissolved firm of Jacob Ayres & Son, and was therefore applicable to the payment of the creditors of said firm, and that the said Jacob had in no way acquired any such right or title to said property and effects, as entitled him to deal with it as his *individual* property, and to convey it in trust as he had attempted to do, and that therefore the said deed was void, and should be set aside.

"It is to be observed that the complainants, in their bill, impeached this deed of trust solely upon the ground that it is voluntary; that, by it, the said Jacob Ayres attempts to give to his daughters, without receiving any consideration from them, property belonging to him, the proceeds of which should be applied to pay the debts of Jacob Ayres & Son, of Jacob Ayres & Co., and of Jacob Ayres. It treats the property conveyed by it as his property, and shews that so far as any part of it had belonged to the late firm of 'Jacob Ayres & Son,' he had acquired the title thereto by purchase from Henry H. Ayres, his son, who, with his father, had composed that firm.

"The bill represents the complainants as the creditors of the said 'Jacob Ayres,' of 'Jacob Ayres & Son,' and of 'Jacob Ayres & Co.,' under which last style Jacob Ayres, alone, transacted business. And it states, that after the

said 'Jacob Ayres & Son' had become so indebted to them, the said Jacob Ayres purchased out all the rights of his said son, Henry H. Ayres, in the said firm of 'Jacob Ayres & Son;' and that he then conveyed all the property, of every description, to which he had any claim, right or title, to the said Priscilla, by a bill of sale dated the 28th day of December 1857, referred to in the proceedings, upon certain trusts, &c.; and that afterwards, on the 31st day of December 1857, having reason to believe that for some cause the said bill of sale was inoperative, executed the deed of trust above referred to, which differs from the said bill of sale in no respect whatever, except in the recital which it contains, shewing the omission which was supposed to affect its validity. The property conveyed is described as stock of goods and other effects now in the store occupied by me, No. 123 or 124, on Pratt street; all the household furniture and kitchen utensils, including a forte-piano, now being in the house occupied by me as a residence, No. 158 Lombard street; 'also all my right, title and interest as settling partner of Jacob Ayres & Son, or otherwise, or choses in action due or to become due to the late firm of Jacob Ayres & Son.' ' The stock of goods and furniture is described clearly as his individual property, and the descriptive terms in which reference is made to the effects, &c., that had belonged to the late firm of Jacob Ayres & Son, is, in my opinion, perfectly consistent with his asserted title and claim to these effects, as then belonging to him individually, by virtue of his having purchased out, as he states in one of the recitals of the same deed, all the right of his son in the firm of 'Jacob Ayres & Son.' Upon reference further to the answers of the defendants, it will be found, by comparing the responsive statements, and the allegations therein, with the allegations of the said bill, that the only matter put in issue by the pleadings in this case, is the existence of the claims of his said daughters, mentioned

in said deeds, as *bona fide* debts due by him to them, respectively.

"The bill does not question the title of the said Jacob Ayres to the property conveyed by the said deed of trust, by charging that the transfer by the said Henry H. Ayres of his interest in that part of it which had been the partnership property of Jacob Ayres & Son, upon the purchase which the said Jacob made of his said son's interest in it, was not *bona fide*, or by asserting that his title was defective for any reason ; and it is a question of very serious doubt, whether the complainants, under the present state of pleadings, can now insist that there was no sale or transfer made by the said Henry of his interest in the partnership effects of said firm by the said Jacob, or, if there was such sale or transfer, that it was not made *bona fide*, and therefore did not operate to render what had been partnership property, the individual property of said Jacob, and that, consequently, the said effects are still partnership assets in the hands of the said Priscilla, and applicable to the payment of the debts of said firm. Conceding, however, that they may be allowed to assume these positions with a view to the relief that they ask, the first inquiry is: Did Henry H. Ayres sell and transfer his interest in the partnership effects of Jacob Ayres & Son to the said Jacob? Can the complainants question the fact that he did, after having alleged, in their bill, that 'he had purchased out all the rights of his said son in the said firm?' In my opinion, they are estopped from so doing ; but if they had not themselves stated this fact, the testimony is conclusive to prove it. The published notice of their dissolution of co-partnership, which is in evidence, proves this. The original was signed by Jacob Ayres and Henry H. Ayres. It states, that 'Henry H. Ayres, having disposed of his interest in the firm of Jacob Ayres & Son to Mr. Jacob Ayres, the firm is this day dissolved. Jacob Ayres as-

sumes all the liabilities of the old firm, and, for such purpose, will use its name, and to whom all debts due to the firm will be paid.' Here we find the statement, in writing, made by Henry H. Ayres, of the fact that he had disposed of all his interest in the said firm to his father, and the consideration for the transfer set forth also. In reply to the objection made, that the defendants have produced no written transfer or assignment of his interest, it may be properly said, that the original paper, from which this notice was copied, was itself, in fact, a written dissolution of the partnership, and transfer in writing, by Henry H. Ayres, of all his interest in its effects to the said Jacob.

"The complainants have relied upon certain passages in that part of said deed of trust which described the property transferred, to which I have referred above, to show that there was no actual transfer of H. H. Ayres' partnership interest in the property, and no transmutation of it from joint to individual property. I have already expressed the opinion, that there is nothing in these passages inconsistent with the title set up by the defendant, Jacob, to this partnership property as his individual property; and whatever inference, if any, to the contrary they might furnish, is rebutted by the express language used in the recital of the same deed, to the benefit of which he is certainly entitled, as against any inferential deductions from subsequent clauses of the same instrument. It states, in distinct terms, in the recital, 'that he had heretofore *purchased out* all the rights of his son in the firm of Jacob Ayres & Son.' I am of opinion, therefore, from what I regard as clear proof in this cause, that Henry H. Ayres did, at the time of the dissolution of the firm of Jacob Ayres & Son, transfer all his, the said Henry's, interest in the partnership effects of the said firm to the said Jacob Ayres. The complainants concede that such a transfer, if it had taken place and been *bona fide*, would have had the effect to transmute this part-

nership property into the individual property of the said Jacob; but they insist, that if there was such a transfer, it was not *bona fide.* Believing as I do, then, that there was such a sale and transfer made, was it *bona fide?*

"Before proceeding to consider this question, I may premise that the real purpose of these complainants, as it is understood by the Court, is to follow trust property into the hands of a party who has acquired possession of it without having any legal title to it. To accomplish this object, it is not necessary for them, nor do I so understand them to insist, that this deed of trust is fraudulent or void; but that in so far as it attempts to give this trustee title to any of the effects that belonged to the late firm of Jacob Ayres & Son, it is inoperative, because the said Jacob, himself, had no title individually to that property, and that therefore it remains in the hands of this trustee, impressed with a trust for the benefit of the joint creditors of that firm. The only claim that he sets up to it, as his individual property, being founded on the title derived under the purchase from his son. The complainants insist that this purchase, or the transfer that accompanied it, was not *bona fide*, and is therefore void; and, in fact, it is the validity of this transfer, made by a retiring to a continuing partner, which is impeached by this bill.

"The complainants insist that it is not *bona fide*—

"1. Because the retiring partner, who made it, was insolvent. I can find no authority for this position, nor can I discover any valid reason why the mere circumstance of the inability of the retiring partner to pay his debts, should render such a transfer fraudulent.

"2. Because the firm, at the time of the dissolution, was insolvent. It has been repeatedly decided, that the insolvency of the firm, at the time of the dissolution and assignment of the retiring partner's interest to the continuing partner, does not vitiate the transfer, or prevent the pro-

perty from becoming the individual property of the con-
tinuing partner. In *Collyer on Partnership, Book IV, ch.*
202, *marginal p.* 515, the author says: 'The effect of the
conversion of joint into separate estate, will not be altered
by the circumstance that, at the time it took place, the
partners knew that the firm was insolvent. A conversion
under such circumstances, is not necessarily a fraud upon
creditors.' *Ex-parte Peake,* 1 *Mad. Ch. R.,* 346. In this
case it was distinctly objected that 'the purchase was invalid
and fraudulent, because the partnership was insolvent,'
and the partners knew it; but, in answer to the objection,
the Court say: 'The mere circumstance of the partnership
being, at the time of the retirement, in such a state that
their joint effects were not sufficient to pay their joint debts,
would not, *per se,* be sufficient to invalidate a dissolution
of partnership, made fairly between the partners them-
selves. In that case the Court held, that the retiring
partner had made a valid transfer of his share in the part-
nership effects to the other, although they both knew that
the partnership was insolvent.'

"And further, this objection rests upon an assumption of
fact which I do not find to be sustained by the evidence in
the record. The testimony upon this point, returned with
the several commissions, shews, in my opinion, that the
firm was not insolvent at the time when the dissolution
took place, and Jacob Ayres purchased out the interest of
Henry H. Ayres in the firm, but that according to any
fair and reasonable estimate of the value of its choses in
action and effects at that time, its assets would have been
abundantly sufficient to pay all its liabilities. As respects
the third ground taken by the complainants, against the
*bona fide* character of this transfer, viz., that 'there was
no distinct covenant or agreement of the continuing part-
ner to pay the debts of the firm,' I have only to add to
what I have already stated in regard to the effect of the

written articles of dissolution of the firm, signed by both of the partners and published, that I regard it as containing a distinct agreement on the part of Jacob Ayres to pay the debts of the firm.

"Upon a careful consideration of all the facts and circumstances connected with the dissolution of this partnership, and the purchase of the interest of the retiring partner in its effects, I must express the opinion, that I can discover nothing in them to satisfy me that it was not *bona fide*, or 'the act of men, acting fairly, winding up the concern.' The consideration for the transfer, was the agreement of Jacob Ayres, that he would pay the debts of the firm. He took possession of the effects, which seemed to be sufficient for that purpose, immediately, and brought into the business of the new firm the sum of $3,000, which he borrowed from his daughter, Mrs. Coleman, indicating thereby, as it seems to me, a *bona fide* intention to go on with the new business, with the advantages of additional capital, and which he continued to prosecute, without doing any act in connection with it of a suspicious character, until he was compelled to suspend its operations, and there is no proof in the cause of his having misapplied, squandered, secreted, or clandestinely disposed of any part of these effects.

"In regard to another objection to this transfer, viz: that so far as it attempts to transfer debts of the firm of 'Jacob Ayres & Son,' those debts, notwithstanding the assignment, will continue to be joint property, that objection is founded upon decisions in the English Court of Bankruptcy, growing out of the peculiar provisions of the English statutes upon that subject, and they shew that the assignee in bankruptcy cannot claim the debts of the firm as the individual property of the bankrupt, unless the retiring partner had assigned them in writing, and the continuing partner had given notice of the assignment to the

debtors. That decision is deemed necessary to gratify the requirements of the words of these statutes by the judges sitting in bankruptcy. But certainly such a rule cannot be demanded by a Court of Equity, one of whose peculiar functions it is, to maintain the title of the assignee of the choses in action whose title is not respected at law. Such a Court could not seriously consider the sole objection— coming from a party impeaching an assignment of choses in action—that no notice had been given to the debtor. I must, therefore, pass an order in conformity with the foregoing views."

The cause was argued before BARTOL, GOLDSBOROUGH and COCHRAN, J.

*Wm. Price,* for the appellants:

The trusts of the deed are to collect, receive and reduce to possession, the property mentioned therein, and distribute the same *pro rata* among the following persons, viz: To Priscilla Fahnestock, $3,376.75; to Sidonia Coleman, $4,000; to Elizabeth Ayres, $600; to James Sellman & Co., $850; and to James Armstrong & Co., $150. The debt due to Priscilla Fahnestock, as appears from her answer, was a loan made to her father in November 1840, and January 1841, of $2,000, which was during the firm of Ayres & Sewell; and a further loan of $1,750, to Jacob Ayres & Son, amounting to the sum of $3,750. The acknowledgment of Jacob Ayres & Son, dated January the 31st, 1849, is of a debt of $3,406.75, due her as having been borrowed from her by Jacob Ayres & Son, on the 23rd of January 1842. The money lent by Priscilla Fahnestock to Jacob Ayres, was an individual debt, which will be presumed to have been paid from the lapse of time. Priscilla Fahnestock went to live with her father in 1838, and continued to live with him, and

was supported by him principally from the goods of the firm, her board, &c., constantly reducing the debt, the interest having been paid.

The debt due Sidonia Coleman was for money lent by her to her father, after the failure of the firm of Jacob Ayres & Co.

The debt due Elizabeth Ayres, was created as follows: She received the money in an ordinary course of distribution from her father's estate, and of course it was her husband's, who was a member of the firm, and it was by him very properly put into the business of the firm.

The property conveyed was that of Jacob Ayres & Son, Jacob Ayres & Co., and the individual property of Jacob Ayres. If the assets of each firm go to the creditors of each, and the assets of the individual to his separate creditors, then the property conveyed by this deed would go of right to persons very different from those contemplated by the deed.

Under the commission, when first returned, the witness, Wood, proved the insolvency of Ayres & Son. After this, the respondents by petition, prayed that the commission should be remanded, and under the remanded commission Woods was re-examined, and proved that Ayres & Co. were not insolvent when the money was advanced. The judge below says, there was but one issue in the case, and that the question of the insolvency of the firm was not raised. But the respondents instead of taking this position, as they had a right to do, by petition asked for the remanding of the commission to take testimony on this very issue, and did take it, and having enlarged the issue must stand by it. *Sto. Eq. Pr.*, sec. 291.

An assignment by a firm, preferring creditors of the individual or *vice versa*, or preferring the creditors of one firm to payment out of the assetts of another, is invalid. *Jackson vs. Carroll*, 1 *Sanf. Ch. R.*, 348. A retiring part-

ner may, for a valuable consideration, convey to his successor his interest in the firm from which he is about to retire, but it must be done by assignment. But he cannot assign when he or the firm is insolvent. 11 *Md. Rep.,* 573, *Sanderson vs. Stockdale.* There was no assignment from Henry H. Ayres to Jacob Ayres & Co.

The equity of the joint creditors to the joint effects, and *vice versa;* has been adhered to in Maryland, with more constancy than elsewhere. *McCullough vs. Dashiell,* 1 *H. & G.,* 96. 2 *Md. Rep.,* 15, *Glenn vs. Gill.* A general assignment, giving preferences which does not on its face convey all the property, is void. 3 *Md. Rep.,* 35, *Green & Trammel, vs. Trieber.* 11 *Md. Rep.,* 380, *Rosenberg & Blonheim,* vs. *Moore.* The deed of trust was voluntary, the debts preferred not being actually due by Jacob Ayres or by Jacob Ayres & Son. *Bur. on Assignments,* 137, (*Ed. of* 1858.)

*Robt. J. Brent* and *J. Prentiss Poe,* for the appellees :

It is no evidence of fraud, that a partner on retiring, assigns his right to the effects and assets of the firm to the continuing partner, on his assuming the liability for the debts of the firm, nor that the daughter lived with the father, and used groceries furnished from his store. The charge of actual fraud has been abandoned. The only allegation of the bill in this point of view, pressed by the appellants, is, that Jacob Ayres has made a fictitious conveyance of property belonging to Jacob Ayres & Son, and Jacob Ayres & Co., for debts not actually due and owing.

Whether the inheritance or distributive share of her father's estate, received by Elizabeth Ayres, became the property of her husband, was a matter resting with the husband. If he thought proper that it should remain her separate property, it is not a matter for others to question. The money lent was hers, and was lent as hers, and this all the testimony shows.

No issue of insolvency was raised by the bill, the evidence taken by the defendants was to show that Ayres & Son, and Ayres & Co., were not insolvent at the time the several sums were lent. It was discretionary with the Court, whether to remand the commission or not, and that discretion was properly exercised. We maintain the following positions:

1st. The complainants having alleged a purchase by Jacob Ayres of the interest of his son, Henry H. Ayres, in the effects of the firm of Jacob Ayres & Son, and having framed their bill on that theory, cannot now controvert that fact.

2nd. Conceding that they are not thus estopped upon the pleadings, from denying what under oath they had asserted, yet the proof in the cause is clear that such purchase was made. The recitals in the bill of sale of the 28th of December, and in the deed of trust of the 31st of December 1857, the advertisement in the newspaper at the time of the dissolution of the co-partnership, and the retirement of Henry H. Ayres, with the testimony of Wood, all prove this.

3rd. The proof being clear that such transfer was made by Henry Ayres to Jacob Ayres, in February 1857, it was competent for Jacob Ayres to convey to Priscilla Fahnestock, whatever effects or choses in action, originally belonging to the old firm of Jacob Ayres & Son, he still had at the date of the deed of trust; and the effect of the sale and transfer to said Jacob Ayres by Henry H. Ayres, in February 1857, was to convert what had been joint, into separate property, and to exempt it from all lien of partnership creditors. *Glenn vs. Gill*, 2 *Md. Rep.*, 16. *Griffith vs. Buck*, 13 *Md. Rep.*, 102. *Reese vs. Bradford*, 13 *Ala. Rep.*, 846. *Sanderson vs. Stockdale*, 11 *Md. Rep.*, 563. There was no judgment or execution to bind real or personal estate, at the time of the conveyance by Jacob

Ayres, and the lien being lost by the dissolution of the partnership, was gone forever.

4th. The sale and transfer by Henry H. Ayres to Jacob Ayres, in February 1857, which the proof shows were undoubtedly made, were actual and *bona fide;* first, because there is nothing in the record to rebut the legal presumption of *bona fides,* but on the contrary, the proof is all the other way; and also, secondly, because the insolvency of the retiring partner, and the insolvency of the firm of Jacob Ayres & Son, at the time of its dissolution, in February 1857, conceding both of these facts, do not vitiate said sale and transfer. *Ex-parte Peake,* 1 *Mad. Ch. R.,* 346. *Collyer on Partnership, Book* 11, *ch.* 202, *p.* 515. *Corning vs. Baker,* 7 *H. & G.,* 31; and thirdly, because the proof shows that the firm was solvent in February 1857.

BY THE COURT:—A careful examination of the pleadings and proofs in this case, has satisfied us of the correctness of the order of the Circuit Court, dissolving the injunction; and for the reasons assigned by the learned judge of that Court in his opinion, transmitted with the record, we will sign a decree affirming the order appealed from.

*Order affirmed.*