JAMES O. DRURY ET AL. *v.* STATE CAPITAL BANK OF THE EASTERN SHORE TRUST COMPANY.

[No. 15, April Term, 1932.]

*Decided June 20th, 1932.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, and SLOAN, JJ.

*Eugene P. Childs,* for the appellants.

*George E. Rullman,* submitting on brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

On the day of its date, the defendant James O. Drury be-came the irregular accommodation indorser, before delivery,

of the promissory note, dated June 12th, 1923, of H. Clay Powell to the State Capital Bank of the Eastern Shore Trust Company for the sum of $1,000. This indorsement was made for the benefit of Powell, and, as an inducement to the loan, the indorser represented to the bank that he was the owner of valuable real estate in Anne Arundel County. At the date of the execution of the note, the defendant Drury and his sister, M. Emily Drury, each owned an undivided one-half interest in two parcels of land in Anne Arundel County of one hundred and seventeen and one-half acres and of one hundred and fifty acres, respectively. On October 19th, 1926, the defendant Drury, who was unmarried, conveyed his undivided one-half interest in these two tracts of land to his sister, M. Emily Drury, the other defendant. The note was not paid, and a judgment was obtained on April 18th, 1927, in the Circuit Court for Anne Arundel County against H. Clay Powell and James O. Drury for the sum of $1,002.67, and an execution was issued on August 7th, 1930, that was returned *nulla bona.* In the bill of complaint at bar the State Capital Bank of the Eastern Shore Trust Company proceeded on September 30th, 1930, against James O. Drury and M. Emily Drury, his sister, to set aside the conveyance of Drury to his sister, and to sell the undivided one-half interests conveyed, on the ground that the grant was made with the intent to defraud, hinder, and delay the complainant and other creditors of the said James O. Drury. The bill was filed on behalf of the complaining creditor and of all others who might come in as parties plaintiff. No other creditor, however, appears on the record.

The statute renders void all conveyances made with intent to delay, hinder, or defraud creditors. 13 *Stat. Eliz.,* ch. 5, 29 *Eliz.,* ch. 5. The record does not justify the inference of actual fraud directed against the creditors of the grantor. Actual fraud is, however, not essential. The statute is concerned with legal, not moral, intent. If the direct and inevitable consequence of an act is to delay, hinder, or defraud creditors, the presumption conclusively arises that such illegal object furnished one of the motives for the doing of the act,

and, whatever the real intent, a fraud in law exists, and the actor is not permitted to avert the consequences by his denial that they were fraudulently intended. Fraud within the statute, therefore, does not inevitably impute a corrupt or dishonorable motive. The deed here attacked is sufficient in form to convey the interest in the real property described, and the grant purports to be made upon the receipt of $100 and of other valuable considerations. So the conveyance possesses the essential elements of a legal contract and will stand, unless it be established by competent evidence that it operates to hinder, delay, or defraud the complaining creditor of the grantor.

The parol evidence reveals certain badges of fraud in the transaction. The first is the recital of the payment of $100 when no money was actually passed on the delivery of the deed; and the second is that the grantor transferred all his interest in the real property of which he was then the owner, and left himself without any resources from which the creditor could enforce the payment of his claim. *Schaferman v. O'Brien,* 28 Md. 565, 575; *Wilmer v. Placide,* 131 Md. 399, 406, 102 A. 541. These circumstances create an inference which throws suspicion upon the transaction, and require the grantee to establish by satisfactory proof good faith and a sufficient consideration for the grant. There are countervailing facts. The conveyance was openly made and recorded on the day of its execution, and full possession of the interests transferred passed and was forthwith enjoyed by the grantee. Furthermore, the testimony is clear that the sister, in complete ignorance of any claim of the plaintiff against her brother, and in entire good faith, demanded and obtained the deed in satisfaction of an indebtedness of the brother to her, after he had left their home, and established a residence in the District of Columbia. It follows that, if the transfer was made for a full and valuable consideration, the innocent grantee is protected, on the theory that her equity is superior to that of the general creditor, although there may have been a fraudulent intent on the part of the debtor. *Waters' Lessee v. Riggin,* 19 Md. 536, 553-554; *Troxall v. Applegarth,* 24

Md. 163, 182; *Cunningham v. Dwyer,* 23 Md. 219, 229, 231, 232; *Cooke v. Cooke,* 43 Md. 522, 531, 532; *Smith v. Pattison,* 84 Md. 344, 35 A. 963; *Totten v. Brady,* 54 Md. 170, 173.

The grantee, however, did not obtain the conveyance upon contemporaneously paying or delivering to the grantor a presently arising, adequate, and valuable consideration for the property, but this was not requisite. Even an obligation which cannot be enforced on account of the provisions of a statute is a valuable consideration, because the party may waive the benefit of the statute, and the transfer will be valid as against creditors. Thus a debt which is barred by the statute of limitations (*Knight v. House,* 29 Md. 194, 200; *Wilmer v. Gaither,* 68 Md. 342, 345, 12 A. 8, 253), or a discharge in bankruptcy or insolvency is a good consideration for a conveyance. *Wilson v. Russell,* 13 Md. 494, 528; *Katz v. Moore,* 13 Md. 566, 569, 573; *Webster v. LeCompte,* 74 Md. 249, 256, 257, 22 A. 232; compare: *Linz v. Schuck,* 106 Md. 220, 230, 67 A. 286; *Harper v. Davis,* 115 Md. 349, 351, 80 A. 1012; *Lyell v. Walbach,* 113 Md. 574, 579, 77 A. 1111. *A fortiori,* an existing debt or liability is a valuable consideration. *Holbird v. Anderson,* 5 T. R. 235; *Griffith v. Bank,* 6 G. & J. 424; *Armstrong v. Fahnestock,* 19 Md. 58; *Busey v. Reese,* 38 Md. 264, 269; *Christopher v. Christopher,* 64 Md. 583, 585, 3 A. 296; *Bayne v. State,* 62 Md. 110, 119. And a transfer to a creditor, whose equity is similar to that of other subsisting general creditors, gives him a legal title, which, under the universal rule that where equities are equal the legal title must prevail, is a good consideration within the proviso of the statute which saves the rights of *bona fide* purchasers. Preferences are not fraudulent, and, aside from a statute of insolvency or bankruptcy, an innocent creditor who can secure enough to satisfy his claim is entitled to hold it against other creditors, although the debtor is insolvent. *Bruce v. Smith,* 3 H. & J. 499; *Cole v. Albers,* 1 Gill, 412; *Glenn v. Grover,* 3 Md. 212; *Anderson v. Tydings,* 3 Md. Ch. 167; *Mayfield v. Kilgour,* 31 Md. 240, 244, 245; *Crane v. Barkdoll,* 59 Md. 534; *Smith v. Pattison,* 84 Md.

344, 35 A. 963; *Wareheim v. Bayliss,* 149 Md. 103, 107, 131 A. 27; *Merchants' Bank v. Page,* 147 Md. 607, 609, 128 A. 272; *Fuller v. Brewster,* 53 Md. 359; *McCauley v. Shockey,* 105 Md. 649, 66 A. 625.

This rule is subject to the qualification that the property transferred is fairly equivalent to the debt satisfied. *Wareheim v. Bayliss,* 149 Md. 103, 107, 131 A. 27; *Fuller v. Brewster,* 53 Md. 361; *Crooks v. Brydon,* 93 Md. 643, 49 A. 921; *Commonwealth Bank v. Kearns,* 100 Md. 208, 59 A. 1010; *Thompson v. Williams,* 100 Md. 195, 60 A. 26; *Downs v. Miller,* 95 Md. 607, 53 A. 445; *Wilmer v. Placide,* 131 Md. 399, 102 A. 541; *Wise v. Pfaff,* 98 Md. 581, 56 A. 815; *Cone v. Cross,* 72 Md. 102, 106, 19 A. 391; *Hull v. Deering,* 80 Md. 424, 432, 31 A. 416.

But mere disparity between the real value of the property conveyed and the consideration does not constitute an inadequacy of consideration that would require the deed to be set aside, but, in equity, it would remain as security for the consideration to protect a *bona fide* grantee. *Hinkle v. Wilson,* 53 Md. 287, 293, 294; *Benson v. Benson,* 70 Md. 253, 260, 16 A. 657; *Cone v. Cross,* 72 Md. 102, 106, 19 A. 391; *Hull v. Deering,* 80 Md. 424, 432, 31 A. 416; *Tyner v. Johnson,* 119 Md. 627, 87 A. 266.

The disparity sufficient to justify the inference of fraud must be so glaring as to satisfy the court that the conveyance was not made in good faith. *Fuller v. Brewster & Co.,* 53 Md. 358, 361, 363; *Crooks v. Brydon,* 93 Md. 640, 644, 49 A. 921; *Commonwealth Bank v. Kearns,* 100 Md. 202, 208, 209, 59 A. 1010.

So a debtor may, for a fairly equivalent consideration, whether presently arising or being the satisfaction of an antecedent debt, transfer in good faith all or a part of his property to one of the creditors. *Supra.* This rule has found statutory expression in the Uniform Fraudulent Conveyance Act (Code, art. 39B). Under this act the conveyance must be in good faith and upon a fair consideration, which, *inter alia,* is declared to be given for the property when, in exchange for the property, as a fair equivalent and in good

faith, an antecedent debt is satisfied. Sections 3(a) and 4. *Merchants' Bank v. Page,* 147 Md. 607, 128 A. 272; *Wareheim v. Bayliss,* 149 Md. 103, 107, 131 A. 27; *Pauly v. Schultz,* 199 Wis. 107, 225 N. W. 745; *Schlecht v. Schlecht,* 168 Minn. 168, 209 N. W. 883; *Klaseus v. Meester,* 173 Minn. 468, 217 N. W. 593; *Watson v. Goldstein,* 174 Minn. 423, 219 N. W. 550; *Steinberg Co. v. Pastive,* 97 N. J. Eq. 52, 129 A. 201.

While it is a circumstance to be considered in ascertaining the existence of a valid indebtedness between the brother and sister, the lengthy duration of the account, without its being stated or evidenced by a written obligation, is not alone sufficient to make an honest claim an insufficient basis of consideration, as is illustrated by the decisions in *Fuller v. Brewster & Co.,* 53 Md. 358, 361, 363; *Crane & Sons v. Barkdoll,* 59 Md. 534, 536; *Commonwealth Bank v. Kearns,* 100 Md. 202, 204, 205, 59 A. 1010. Nor is the grantee, when the deed is assailed as fraudulent, precluded from showing that the actual consideration was a subsisting indebtedness of the grantor to the grantee by the recital in the conveyance that it was in consideration of $100 paid and of other valuable considerations. The satisfaction of an antecedent indebtedness is a valuable consideration, and embraced within the meaning of the phrase, "other valuable considerations." *Cunningham v. Dwyer,* 23 Md. 219, 228-233; *Diggs v. McCullough,* 69 Md. 592, 608, 609, 16 A. 453; *Merchants' Bank v. Page,* 147 Md. 607, 609, 128 A. 272; *Braecklein v. McNamara,* 147 Md. 17, 20-22, 127 A. 497; *Thompson v. Williams,* 100 Md. 195, 60 A. 26. See Code, art. 39B, sec. 3(a), Uniform Fraudulent Conveyance Act.

These rules and principles are to be applied to a record whose material facts may now more particularly be stated. The brother and sister were tenants in common in one of the tracts by inheritance and in the other by grant. For a number of years the two tenants lived together, and the brother managed the farms, and conducted a store in a building on one of them. He received the returns from the farming operations, and was accountable to his cotenant for her share

and her portion of the rental value of the storehouse. According to the undisputed testimony, the understanding between them was in conformity with their legal rights, and the brother used the sister's share in his business with her consent, but never accounted to her, although he had promised to pay.

The sister was a school teacher for a number of years, and, after her retirement, raised poultry and had cows from which she obtained milk and cream, and was a dressmaker and seamstress. Her testimony is that she paid all the purchase money for the farm whose title was taken in her own and her brother's name; and that she loaned him the $500 which she had received as one of the next of kin of a dead brother; that she had paid off during the life of her mother a mortgage of $600 on the property she and her brother had inherited; that she had paid $800 on an automobile which she and her brother had purchased upon the agreement that each would pay one-half of the cost price of $825; and that she had loaned him, from time to time, sums of $50 or $25, but that she could not tell exactly how much. Her testimony is to the effect that her brother promised to pay these obligations to her, but never did. Her brother fully corroborated his sister. In addition, he mentioned his having borrowed the specific sum of $400 which she had received as a legacy. The sister stated that she did not know how much she had loaned her brother, and did not attempt to state the total sum due to her. Nor does the brother give the particulars of his debt. He, however, testified that the account covered a long period, and the amount owing was "somewheres between $6,000 and $7,000," and that he had used her share of the crops and her money to keep his business going.

According to the sister's testimony, she had loaned her brother so much that she finally suggested that he should deed his interest to secure her, and, as he became indignant, she dropped the suggestion for a time, but, because she did not receive any payments, she, within a year, demanded the deed in controversy in payment of what she had loaned her brother. She declared that she had not exacted any evidence of her

brother's borrowings because he and she were the two surviving children, and she believed that, when her brother had the money, he would pay her, with interest. The brother's explanation for the transaction is found in his statement that "the reason for selling the property to my sister was I had been indebted to her and after making demand for it, that was the only way I could secure the money, and I gave her a deed for this property which she had fully paid for."

There is nothing in the record nor any justifiable inference from the circumstances to reject the sister's explicit denial of all knowledge of her brother's obligation to the plaintiff. Furthermore, the brother's testimony is to the same effect. He also said that, when he made the deed, he was under the impression that the maker had taken care of the obligation as he had promised in the summer of 1926. The maker of the note was a witness, and his evidence was that he told the brother at the ferry in the summer of 1926 that he was going home to try to close a deal out of which he expected to pay the whole note, and that his expectations were disappointed because the deal did not go through.

This testimony on the part of the defendants is not as clear and definite as is desirable, but it is not contradicted in any detail nor is it so inherently improbable as to produce disbelief. While the items of the aggregate indebtedness are not all given, and probably cannot be supplied, it does convincingly appear that the brother and sister agreed that the indebtedness was sufficiently large to be in excess of the value of an undivided one-half interest in the two farms at the time of the grant. An analysis of the evidence will result in the same conclusion.

The value of the two tracts of land which were owned by the brother and sister as tenants in common is estimated by witnesses to be from $6,500 to $7,000. From 1918 to 1932 the assessments of these properties varied from $5,600 to $5,308, because of a slight reduction in acreage and in the valuation. These values are of each parcel as a distinct unit, and therefore are not accurate measures of an undivided one-half interest of a tenant in common. A plurality of owners

in a tract of land breaks the estate in as many undivided interests, in the possession and under the control of as many minds and wills, and to secure the value of the whole there must be effected a union of these diversities either by agreement or by the compulsion of a partition in kind or through a sale and division of its net proceeds. Hence the value of an undivided interest in land is not fractionally comparable to the value of an estate in severalty; and therefore the fair market value of an undivided interest cannot be said to be the corresponding aliquot portion of the fair market value of the whole tract. Thus the fair market value of an undivided one-half interest in a parcel of land whose value is $7,000 is not ascertainable by simply halving this sum. It follows that there is no satisfactory testimony in this cause of what an undivided one-half interest in the two farms is fairly worth on the market. If it be put at the clearly excessive sum of $3,500, the amount of the debt satisfied by the conveyance of the brother to the sister is fairly proportionate. In fact, the brother testified that his indebtedness to his sister was as much as $6,000 or $7,000, which is at least double the value of the interest conveyed to the sister. The testimony of the brother is not contradicted, but it has the inherent weakness of an estimate. It is, however, the best evidence available, because there was no detailed account kept of the debt of the brother to the sister, and, while open to attack, it was not impugned. The relationship and circumstances of the parties go far to relieve the improbability which would ordinarily attach to a debt whose items accrued during a long period, and were not shown to have been kept in the form of an account nor reduced to an obligation in writing.

The testimony of the brother and sister does, however, furnish some of the principal amounts which are included in this total. Without going into the details, the principal of the specific sums due by the brother to the sister aggregated about $1,600, but to this must be added one-half of the purchase price for one of the farms. The sister paid the purchase money, although the title was taken in her and the brother. What was the sum paid is not disclosed, but in 1918

this farm was assessed at $2,340, as is shown by the testimony offered by the complainant. The farm was apparently acquired in 1907, and, even if its cost be put at $1,000, the portion which the brother assumed, but never paid, would increase the principal of the particular amounts so that, with interest, the indebtedness of the brother to the sister would have been greater than the value of the undivided one-half interest in the farms of the brother at the time of the conveyance assailed. In any event, the discrepancy would not be so great as to make the indebtedness satisfied less than an amount which would fairly represent the value of the interests in land that were transferred. *Crooks v. Brydon,* 93 Md. 643, 644, 49 A. 921; *Fuller v. Brewster,* 53 Md. 361, 362; *Commonwealth Bank v. Kearns,* 109 Md. 205, 206-209, 59 A. 1010.

The coincidence that the grant was contemporaneous with the demand made upon the brother for the payment of his obligation as indorser and that the real estate granted embraced all his tangible property are not ignored. These facts lose their significance because the sister is shown to have not known of the first one, and, as to the second, the inclusion of all of the brother's interest in the land was necessary to satisfy his indebtedness to the sister. Furthermore, the indebtedness did not arise for domestic or other services gratuitously rendered by a sister to her brother while living together; and the relation of tenants in common of the land and of lender and borrower raises no presumption that the cotenant and borrower was not liable to account for rents and profits received and to pay the money borrowed. Accordingly, there is nothing in the situation of the parties or in the nature of the grant which would raise a bar to the acceptance of the positive and direct testimony of the brother and the sister that the relation of debtor and creditor began concurrently, not only with the money paid or loaned by the sister at the instance and for the account of the brother, but also with his failure to account for the rents and profits of the farms held in common. The evidence is clear how the sister acquired the money which she loaned to her brother. There is nothing

improbable or incredible in their testimony, and the complainant offered nothing on the question of the indebtedness by way of refutation. In our opinion, there is no justification to impute perjury to the brother and sister by declaring their testimony to be false in substance, and, in the absence of all contradiction on material issues, their testimony must be believed. *Fuller v. Brewster,* 53 Md. 358, 361; *Crane v. Barkdoll,* 59 Md. 534, 537; *Commonwealth Bank v. Kearns,* 100 Md. 202, 204-206, 59 A. 1010; *Wareheim v. Bayliss,* 149 Md. 107, 131 A. 27.

As was declared in *Commonwealth Bank v. Kearns, supra,* independently of the bankruptcy and insolvent statutes, the law does not prohibit near relatives from giving preference to each other, when done, as we find on this record, *bona fide,* without fraudulent intent, and upon a fair consideration, although the grantor was, or thereby made himself, insolvent. It follows that the chancellor was in error in setting aside the deed, and in directing that the judgment debtor pay or bring into court, within thirty days, the amount of complainant's judgment, interest, and costs, and, upon default, in decreeing a sale of the debtor's undivided interest.

The bill of complaint should have been dismissed.

> *Decree reversed, and cause remanded for a decree in conformity with this opinion, and providing that the plaintiff pay the costs here and below.*