(Decided February 17th, 1863.)

---

THE BALTIMORE & OHIO RAIL ROAD COMPANY, GARNISHEES OF
PATRICK CROWLEY AND SAMUEL D. PHILLIPS, *vs.* THOMAS
CLARK.

A promise to pay after a discharge under the insolvent laws, waives the discharge, and the prior debt is a sufficient consideration for the new promise; but the new promise thus made to charge the party, must be an express promise, and must be absolute and unconditional.

It is difficult to see the difference between allowing an *implied promise to remove the effect* of the insolvent's discharge, and admitting circumstances from which, in the absence of direct and positive proof, an express promise is to be found or inferred.

An express promise, established by implication or inference from circumstantial evidence, is an implied promise in effect. All the evils which would result from the one, are attendant upon the other.

Where the alleged promises consisted of the expression of an *intention and desire* on the part of the insolvent to pay the plaintiff "*as soon as he was able,*" and of requests made on several occasions to a witness, by the insolvent, to pay the plaintiff, the witness being largely indebted to the insolvent, and it not appearing whether such indebtedness accrued before or after the insolvent's application for the benefit of the insolvent laws,—
HELD:

1. If the indebtedness existed prior to the application, these requests were legally nothing more than expressions of a willingness to pay, because the insolvent had no right to apply that debt to the satisfaction of one creditor in preference to another, or to make any application of it that it was the duty of the insolvent's trustee to make.

2. If the indebtedness accrued after the application or discharge, the request to pay was not equivalent to an express, positive, unconditional promise to pay, but rather in the nature of an assignment of one debt to meet another, not stronger than the cases of part payment of principle or interest after the discharge, which are not sufficient to revive a debt.

3. The expression of an *intention and desire* to pay "*as soon as he was able*," was not a waiver of the discharge by the insolvent.

APPEAL from the Superior Court of Baltimore city.

This was an *attachment on warrant*, issued out of the Superior Court of Baltimore city, to recover $1,244,13, alleged to be due from Crowley and Phillips to Clark, and was laid in the hands of the garnishees, who were admitted to have had funds sufficient to pay the debt. The garnishees pleaded *non assumpsit* and limitations on behalf of the defendant, and *nulla bona* for themselves, and there were agreements in the cause by which the discharge of the defendant under the insolvent laws might be given in evidence as though pleaded, and that the plaintiff might give any evidence in regard to the plea of insolvency which might be given under any replication.

*1st Exception.* The plaintiff offered to read to the jury the deposition of Frederick C. Crowley, which had been taken by consent, "to be read in evidence on the trial of the cause, as though taken before a commissioner of the Court, subject to all legal exceptions."

The portion of the deposition containing the alleged "new promises" upon which the plaintiff sought to recover, is as follows:

"Frederick C. Crowly, a witness of lawful age, produced, sworn and examined on the part of the plaintiffs in the above cause, deposeth and saith: That Patrick Crowley and Samuel Phillips constituted the firm of P. Crowley & Company at the time the causes of action bear date; Patrick Crowley was the father of witness; knows nothing of the promissory note filed in the cause; does not think the signature thereto is the signature of his father; that P. Crowley & Company were contractors at Hood's Mill, on the Baltimore and Ohio Rail Road, and witness was finishing up their work; they had a store there, and

witness was in and out of the store constantly; frequently
sold goods for them, and marked goods; had full control
of the store as well as the mill; knows that the goods men-
tioned in the account filed in the attachment were pur-
chased from the plaintiff by P. Crowley & Company, and
were delivered to them at or about the dates mentioned in
the account.   A short time after said account was made, in
the succeeding Spring, Patrick Crowley applied for the
benefit of the insolvent laws of Maryland; deponent was
present when his schedule was made out; his father said.
that any debts which that work owed, or which were con-
tracted on that work, he did not wish to get rid of, but
wished to pay them, and would pay them afterwards, and
that he only intended by his application to get rid of se-
curity debts.   Witness, since that time, has frequently
spoken with his father about the debt mentioned in the ac-
count, and his father always expressed a desire to pay it,
and said he would pay it as soon as he was able, and re-
quested witness on several occasions to pay it to Clark for
him.   At the time these requests were made, witness was
indebted to his father in large sums, at one time in $10,000
or $12,000, and if witness had had the money, he would
have paid it at once; he means by this, if he could have
spared the money from his other engagements; he, from
time to time, communicated these requests of his father to
Mr. Clark, and said to Clark that he would pay him out
of the first money he could spare.   These requests were
all made (and some of them two or three years) after his
father's application for the benefit of the insolvent laws.
Since this attachment was laid, and during the Fall of 1852,
his father told witness that Clark had attached, and that
he had no right to attach; that he might have known he
would have paid him.   He does not profess to state his
father's words exactly, but witness understood him that it
was not necessary for him to attach to get the claim, that

he would get the claim without attachment.  His father wrote to him, about the Fall of 1851, in relation to this claim; that letter he left among his papers in Marian county; he has searched carefully for it, and cannot find it; he does not believe the letter is lost, but thinks it is still among his papers, though he cannot find it after a diligent search for it; it is lost to him now.  In reference to this claim, he granted that he had seen Mr. Clark, and Mr. Clark had spoken to him about his bill; and that if it had been any other time of the month than the middle, which was not estimate time, and he had had the means, he would have paid it; and that he wished when witness went after his (witness') estimate, he, witness, would spare Clark the means and pay it."

To the reading of this deposition the garnishees objected, it being admitted that the said witness, though a resident of Carroll county, Md., at the time the deposition was taken, and so then known to be by the respective parties, was, at the time of the trial, living and residing in the city of Baltimore, and so also known to be by the respective parties; and no proof being made of the inability of the plaintiff to procure the attendance of the witness, except that the plaintiff had issued a *subpœna* for said witness on Saturday, the 18th of June, to which the sheriff had made no return, and was laid under no "*rule return*" by the plaintiff, although the said witness had been returned "summoned" by the sheriff at the commencement of the term.  But the Court overruled the objection, and allowed the deposition to be read.  The garnishees excepted.

*2nd Exception.*  On the next day the plaintiff produced the witness, and offered to prove by him that he was absent from the city on the day before, and only returned on the evening of that day; and the plaintiff then offered to examine him in chief, to which the garnishees' counsel objected.  The plaintiff then tendered the witness to the gar-

nishees for cross-examination upon his deposition already produced and read to the jury, but the garnishees refused to cross-examine said witness. Whereupon the Court permitted the said witness to testify as to the facts of his absence from the city, and the plaintiff declined examining the said witness further as to the matters and things testified to under his said deposition, though the Court was willing to allow the same, the garnishees continuing to object thereto, and continuing their refusal to cross-examine said witness. To which permission of the Court, and the testimony of the witness thereunder given, the garnishees excepted.

Evidence was then offered by the garnishees of the discharge of the defendant, Crowley, under the insolvent laws, and the plaintiff relied upon the evidence in the cause as showing a new promise.

The garnishees thereupon offered four prayers, of which the Court below (LEE, J.) granted the second and third, and rejected the first and fourth; but afterwards, at the instance of the plaintiff, granted the fourth prayer, with an addition thereto. The said first and fourth prayers, with the plaintiff's addition to the latter, are set out in the opinion of this Court. The garnishees appealed from the rulings of the Court, as stated in the 1st and 2nd exceptions, and rejecting his first and fourth prayers.

The cause was argued before BOWIE, C. J., and BARTOL and COCHRAN, J.

*G. W. Dobbin,* for the appellant:

1. The admission by the Court of the deposition of Frederick C. Crowley, was in direct violation of the Act of 1828, ch. 165.

2. The inadmissibility of the deposition was not cured by the tender of the witness for cross-examination as to

65      v.19

the matters testified to by him in the deposition,—the said deposition being improperly in evidence, and the plaintiff declining to examine the witness as to the matters testified to under his said deposition, though the Court was willing to allow such examination.

3. The Court erred in refusing the garnishees' first prayer, the evidence of Frederick C. Crowley, the only evidence in the cause tending to that end, not being sufficient to show an express promise by P. Crowley, the defendant, after his discharge.

Where a debt is barred by the statute of limitations, the law presumes either that the debt never existed, or has been paid. Where there has been a discharge under the bankrupt or insolvent laws, there must be an express promise to pay, not an implied promise from proof of the existence of the debt only, or facts which a Court of Law will instruct a jury to be sufficient from which to find an *unequivocal, distinct and unconditional* promise to pay. *Mucklow vs. St. George,* 4 *Taunt,* 613. *Lynbuy vs. Weightman,* 5 *Esp. Rep.,* 198. *Fleming vs. Hayne,* 1 *Stark.,* 370, (2 *Eng. C. L. Rep.*) *Brook vs. Moore,* 13 *Price,* 567. *Kelly vs. Pike,* 5 *Cush.,* 484. *Merriam vs. Bayley,* 1 *Cush.,* 77. *Brown vs. Collier,* 8 *Humph.,* 510. *Prewett vs. Caruthers,* 12 *Sm. & Mar.,* 491. *Youtheim vs. Keyser,* 11 *Penn.,* 365. *Cambridge vs. Littlefield,* 6 *Cush.,* 210. *Yates vs. Hollingsworth,* 5 *H. & J.,* 217. *Stewart vs. Reckless,* 4 *Zabriski,* 427.

The first promise was before the application for the benefit of the insolvent laws. The only parties present at the time, were the father and son, no other relation, in a business point of view, having been proved to exist between them, and no agency for Clarke, by the son, being proved to exist. Here is no promise binding on the father.

The promises of the 2nd class were all made (some of them two or three years) after the application of the father

for the benefit of the insolvent laws. These were not binding on the father. It must have been proved by the plaintiff that the promises were made before the institution of suit. The cause of action in cases like this, is the new promise, the old debt being the consideration.

The 3rd class of promises consists of those made since the attachment was laid. These are out of the case.

The 4th class of promises embraces the only ones *in point of time* in the case. There are no proper parties to these promises to bind the father, and they are not sufficiently definite, express and unequivocal, if otherwise good.

4. The Court erred in refusing to grant the garnishees' fourth prayer, *as offered.*

*S. T. Wallis*, for the appellee:

1st. That by the spirit and very language of the agreement under which Crowley's deposition was taken, he was entitled to read it in evidence. The language of the agreement is, that it "shall be taken and read in evidence on the trial of the cause," not that the plaintiff should be entitled to read it, under the same circumstances, which would have entitled him so to do, if it had been taken before a commissioner, but that it should be read absolutely, "subject to all legal exceptions." That the reservation of exceptions was only as to the admissibility of facts not to be proven, not to the mode in which they were proved.

2nd. The objection to the deposition, if any, was removed by producing the witness in Court, and offering to re-examine him in chief, offering him to the appellant for cross-examination, and proving by him that the facts had existed, entitling the appellee to use his deposition when it was read. The appellant had the advantage of a cross-examination in the presence of the jury, as fully as if the facts in the deposition had been testified to by the witness on the stand. The appellant not only refused to avail

himself of the opportunity thus offered, but objected to the witness being examined anew on the stand by the appellee. By so doing, he waived his first exception, and is estopped now from saying that the oral examination to which he so objected, was preferable to the deposition. If he had expressly waived the oral examination, such would clearly have been the result. A *fortiori* ought there to be an objection to it to produce that effect. If the appellee had handed the deposition to the witness, and asked him if the facts testified to in it were true, his affirmative answer would have made it evidence, as effectually as if every word of it had been reiterated. The appellant would have gained nothing beyond what was offered him, and refused,—an opportunity for cross-examination on the stand. Every purpose for which oral examinations are required, was gratified, and it would seem like trifling with legal principles, to send back the case merely to go through a useless formality. *Phila., Wil. & Balt. R. R. Co. vs. Howard,* 13 *H.,* 330, 336 and 337. *Alexander vs. Walter,* 8 *Gill,* 240, 253 and 254. *McClellen vs. Kennedy,* 8 *Md. Rep.,* 250. *National Fire Ins. Co. vs. Crane,* 16 *Md. Rep.,* 260 and 294.

3rd. If the agreement be considered as having entitled the appellant to use the deposition only under the same circumstances which would have rendered it admissible if it had been taken before a commissioner, it might be considered as taken under the 2nd or the 3rd sec. of the Act of 1828, ch. 165. Under either, a deposition may be taken as well after, as before the institution of a suit. Under the 3rd section, which provides for the perpetuation of testimony, so that it may be used in future as well as in pending cases, it is required to be recorded. The agreement certainly goes to the extent of dispensing with every thing which could have been done with testimony taken before a commissioner, and gives the deposition all the efficacy

which could have been imparted to it by any formality. All the preliminary requirements of either or both of these sections, must be regarded as having been complied with. If those of the 3rd section had been complied with, it would only have been necessary to have shown that the witness was "out of the State, or could not be had to attend." On the first day of the trial, under the first exception, the appellee did show that the witness "could not be had to attend." Although he had been summoned at the beginning of the term, and a new *subpœna* had been issued for him in the middle of it, when called by the crier of the Court, he was found to be absent. What better proof can be required that he could not be had to attend? The appellee was under no obligation to cause the second *subpœna* to be issued, and cannot be prejudiced by the fact that it had not been returned. The witness was bound, under the summons which had been served on him, to remain in attendance until the trial, and it was no fault of the appellee that he was absent. On the second day, the other fact was also proven, that he was out of town when his deposition was used. This fact ought to be considered in connection with the others, to shew that the contingency in which the deposition might be used, under the 3rd section of the Act, had arisen.

4th. The first prayer of the appellant was predicated upon the hypothesis that the defendant, Crowley, had been finally discharged. The record contains no proof of any such fact. The prayer was properly refused on that ground, and the second and third, which were granted, ought to have been refused on the same.

5th. Crowley's list of creditors did not contain the debt due by him to the appellant. This not only sustains Frederick Crowley's testimony, that his father did not mean to be released from that debt, but was enough to prevent the defendant from obtaining his discharge, and may have been

the reason why he never did obtain it. *Teackle vs. Grosby,* 14 *Md. Rep.,* 14.

6th. The deposition of Crowley, however, and the other facts in the record, contain abundant evidence of a new promise, for which the old debt, even if the defendant had been legally discharged from it, would have been a good consideration. *Katz vs. Moore,* 13 *Md. Rep.,* 569, 573.

7th. The 4th prayer, even with the Court's modification, gave the appellant a more favorable instruction than he was entitled to. His application for an insolvent discharge, which had not been obtained, cannot affect the case. If the prayer was intended to refer to the bar of limitations, that is certainly removed by the mere recognition of the debt as a subsisting obligation. The law implies from such recognition the necessary promise. *Ellicott vs. Nichols,* 7 *Gill,* 85. *Johnson vs. Evans,* 8 *Gill,* 155 and 162. *Mitchell vs. Sellman,* 5 *Md. Rep.,* 376.

8th. Even if the record had shown a discharge, the fact of the appellee's claim not having been enumerated in the list of debts, shows that it was improperly granted. The judgment of a Court exercising such a special jurisdiction, may be collaterally impeached. *Teackle vs. Crosby,* 14 *Md. Rep.,* 14. *Savage Man. Co. vs. Owings,* 3 *Gill,* 499.

9th. The Court granted the appellant's prayer, that in order to entitle the appellee to recover, an express promise must be shown to have been made after the discharge. There was no error in adding that such promise, like any other fact required to be proven, might be found by the jury from circumstantial evidence. *Prewett vs. Caruthers,* 12 *Sm. & Marsh.,* 49. *Glenn vs. Smith,* 2 *G. & J.,* 493, 512. *Crawford vs. Berry,* 6 *G. & J.,* 71, 72. *Yates vs. Donaldson,* 5 *Md. Rep.,* 396. *Riarl vs. Wilhelm,* 3 *Gill,* 356, 364. *Nelson, Exr. of James, vs. Howard,* 5 *Md. Rep.,* 326, 333.

Balt. & Ohio R. R. Co., Garn. of Crowley, *et al.*, *vs.* Clark.

Bowie, C. J., delivered the opinion of this Court:

The appeal in this case is taken from the ruling of the Court below, admitting the deposition and testimony of Frederick C. Crowley, a witness examined on the part of the plaintiff, under the circumstances set out in the first and second bills of exceptions; and from the refusal of the Court to grant the defendant's first and fourth prayers, and the qualification of the fourth prayer by the Court, entitled "plaintiff's prayer."

The questions on the exceptions going only to the admissibility of the testimony, and those arising on the refusal and qualification of the prayers, involving the competency of that testimony when admitted, the decision of the latter may render the examination of the former unnecessary.

The prayers referred to are as follows:

*Defendant's 1st Prayer.*—"If the jury shall find from the evidence that Patrick Crowley, the defendant, applied for the benefit of the insolvent laws of the State of Maryland, on the 2nd April 1849, and was, on said application, finally discharged, then the plaintiff is not entitled to recover, notwithstanding they may believe the testimony of Frederick C. Crowley, as detailed in his deposition read in evidence by the plaintiff."

*Defendant's 4th Prayer.*—"That to entitle the plaintiff to recover upon a new promise made by P. Crowley, after his application, the jury must find that such promise was made to the plaintiff himself, or to some agent of the plaintiff in that behalf, and the mere recognition of the existence of such debt, accompanied with the expression of a desire to pay it, and of an intention to pay it, is not, of itself, and without a distinct promise to pay, sufficient to entitle the plaintiff to recover."

*Plaintiff's Prayer.*—"That the jury are at liberty to find that an express promise was made by the defendant, Crowley, to the plaintiff, from the facts (if the jury find such

facts) that the said defendant, after his insolvent discharge,.recognized the debt due to the plaintiff and in controversy, as a subsisting legal obligation, and directed his son to pay the same out of his (the father's) moneys in the hands of his said son, and from the other facts of the case, if they think the said facts, altogether, justify such finding."

The deposition of F. C. Crowley was the only evidence in the cause to show such an express promise, and therefore the garnishees, by their first prayer, ask the Court to instruct the jury, if they shall find from the evidence, that Patrick Crowley, the defendant, applied for the benefit of the insolvent laws of the State of Maryland, on the 2nd April 1849, and was on said application finally discharged, then the plaintiff is not entitled to recover, notwithstanding they may believe the testimony of said Frederick C. Crowley, as detailed in his deposition, read in evidence by the plaintiff.

The authorities cited by the appellants, sustain the position assumed by them, that insolvents and bankrupts stand upon different ground with respect to debts from which they are discharged, from persons whose debts are barred by the statutes of limitations; those statutes do not discharge the debt, but only affect the remedy.

In *Lynbuy vs. Weightman*, 5 *Esp. Rep.*, 198, the plaintiff meant to rely on a new promise to pay, made by the bankrupt since his bankruptcy, and for that purpose was giving evidence of general declarations by the bankrupt, that he would pay everybody, and that his effects would pay twenty shillings in the pound; but there was no specific promise whatever, proved to have been made to the plaintiff. Lord Ellenborough said, "that in order to bind a bankrupt by a new promise, he should expect a positive and precise promise to pay, not given in such general terms as it was offered here."

*Brook vs. Wood*, 13 *Price*, 667, 6 *Eng. Exch. Rep.*, was a case where a verdict for the plaintiff, obtained upon a constructive promise, or a promise by implication, was set aside and entered for the defendant; although the learned Judge who tried the cause had left the question of fact, of promise or no promise to pay, to the jury. Among other opinions to the same effect, Garrow Baron said, "We ought, in all these cases, to hold the strictest hand upon constructive promises of this kind. The promise ought to be of the clearest and most distinct nature, before it can be permitted to have the effect of binding a party in the situation of this defendant. It cannot be pretended that this was any such promise as should have been left to a jury; and therefore I am of opinion that the verdict cannot be supported."

In Massachusetts, the part payment of principal and interest of a debt by a discharged bankrupt or insolvent, have been held insufficient to support an action, or raise a new promise to pay. *Merriam vs. Bayley*, 1 *Cush.*, 77. 5 *Cush.*, 484. 6 *Cush.*, 210. In Mississippi, the High Court of Errors and Appeals said: "The English authorities hold that the promise to pay will not make a bankrupt liable, unless it be distinct and unequivocal. We are not prepared to hold that a mere vague or conditional promise will be sufficient; on the contrary, we are rather inclined to exact more than the English decisions have done. If a subsequent promise will bind at all, it must be of the most unequivocal character. We do not say whether any promise will be sufficient."

In 11 *Penn. Rep.*, 365, the discharged bankrupt declared that he was "going to pay" the particular debt which was the cause of action, "as quick as he was able," and that he was "going to pay all his honest debts, except some in the city." It was held that this language, although expressive of an intention, did not constitute an engagement to pay, which is necessary *to give legal effect* to the moral obligation,

it is not enough that there was a recognition of the debt. "The effect of such evidence has been carried very far to avoid the statute of limitations, much further than it ought to be, in order to avoid a bankrupt's discharge, which would otherwise be a dead letter." The decisions in New Jersey and New York, are to the same effect. 3 *Wend.*, 344. 14 *Johns. R.*, 178. 7 *Johns.*, 36.

In this State, as far back as 1821, in the case of *Yates' Admrs. vs. Hollingsworth*, Earle, J., in delivering the opinion of the Court, said: "A promise to pay, after bankruptcy, waives the discharge, and the prior debt is a sufficient consideration for the new promise. But the new promise thus made to charge the party, must be an express promise, and must be absolute and unconditional." 5 *H. & J.*, 217.

Without adopting the extreme views of some of the authorities above cited, it may be remarked that the policy indicated by the general current, has been adopted and inscribed in the recent legislation of Great Britain, requiring promises to revive a debt barred by a discharge in bankruptcy, to be evidenced by writing. *Eden on Bankruptcy,* sec. 15, *p.* 429. The decision in this State, last cited, has our full concurrence, and is conclusive.

The appellee contends, that though the promise must be positive, express and specific, yet it may be inferred by the jury from circumstances, and need not be proved by direct proof. We are not prepared to admit this proposition. It is difficult to see the difference between allowing an implied promise to remove the effect of the insolvent's discharge, and admitting circumstances from which, in the absence of direct and positive proof, an express promise is to be found or inferred.

An express promise, established by implication or inference from circumstantial evidence, is an implied promise in effect. All the evils which would result from the one, are

attendant upon the other. The deposition of F. C. Crowley proves, directly, nothing more than an intention and desire on the part of the insolvent to pay the plaintiff "as soon as he was able," and requests made on several occasions to the witness by the insolvent to pay the plaintiff, the witness being then largely indebted to the insolvent. When this indebtedness accrued, is not shown. If it existed prior to the insolvent's application for the benefit of the insolvent laws, those requests were, legally, nothing more than expressions of a willingness to pay; because the insolvent had no right to apply that debt to the satisfaction of one creditor in preference to another, or to make any application of it; that was the duty of his trustee. If the witness' indebtedness accrued after the application or discharge, the request to pay was not equivalent to an express, positive, unconditional promise to pay, but rather in the nature of an assignment of one debt to meet another; not stronger than the cases of part payment of principle or interest after the discharge, which are shewn by the cases cited, not to be sufficient to revive the debt. From these premises, we conclude that the defendant's first and fourth prayers should have been granted, and the plaintiff's addition to defendant's fourth prayer refused.

The testimony of Crowley, contained in his deposition, being incompetent and insufficient, in the opinion of a majority of the Court, it is unnecessary to review the action of the Court below on the first and second exceptions. The judgment below must be reversed.

*Judgment reversed.*

(Decided March 27th, 1863.)