Samuel L. Webster and Noah Webster, Partners, trading under the firm name of S. L. Webster & Son *vs.* Edward W. Le Compte, Executor of the last will and testament of John L. Wrightson, deceased.

*Admissibility of Evidence—Effect of Discharge under Insolvent law—New promise— Consideration—Statute of Frauds —Original and Collateral undertaking to Pay the Debt of another—Executed agreement—Competency of Witness under sec. 2 of Art. 35 of the Code—Effect of Promise by an Executor or Administrator—Effect of such Promise made before his Appointment.*

In an action at law by a firm against the executor of a testator, one of the defences raised was that S. L. W. one of the members of the firm, with the consent of the other member, had agreed to sell to the testator a certain quantity of fertilizer, upon the understanding that the price of the fertilizer so furnished should be applied in part payment of a note for $500, upon which the son of S. L. W., who had become insolvent, was indebted to the testator. The defendant in support of this defence offered to prove by a witness, that upon one occasion when visiting the testator as a physician, he was requested by him "to deliver a message to S. L. W. requesting him to deliver to the testator some fertilizer, according to the understanding between them; that he delivered the message, but that the testator did not tell witness what the terms of the understanding were, nor did the witness know what such terms were." On objection raised it was Held :

That this evidence was admissible as tending to prove that there was a previous understanding between the parties in regard to the fertilizer to be delivered, the terms of which might be proved by other witnesses.

The debt of a person discharged under the bankrupt or insolvent law, is not thereby so absolutely extinguished as to be of no

value whatever to the creditor. It is still subject to be revived by a new promise of the debtor after his discharge, and the debt is a sufficient consideration for the new promise.

And as the debt forms a basis for a promise to pay by the debtor, it equally forms a consideration for a promise to pay by a third party, whereby the debt is to be extingnished and finally discharged.

If the original debt be discharged and extinguished by the substitution in lieu thereof of a new contract or assumption by a third person to pay the amount of that debt, such new contract or assumption is not a collateral promise to answer for the debt or default of another, within the meaning of the provision of section four of the Statute of Frauds.

Where A agrees to deliver to B, a certain amount of fertilizer, to be applied in part payment of a note of A's son held by B, and from which the son had been discharged under the insolvent law, even if said agreement, while executory, were within the Statute of Frauds, the subsequent execution of the agreement by the delivery of the fertilizer, will withdraw it from the operation of the Statute, and the Statute will thence have no effect upon the contract whatever.

The admissions of an executor or administrator, made before he is completely clothed with the trust, cannot be received against himself as the representative of the estate, or to bind legatees, distributees, or creditors.

An admission or promise by an executor or administrator, is not under all circumstances to be regarded as binding and conclusive against the estate.

Section 2 of Art. 35 of the Code, provides that "when an original party to a contract or cause of action is dead * * * or when an executor or administrator is a party to the suit, action, or other proceedings, either party may be called as a witness by his opponent, but shall not be admitted to testify on his own offer, or upon the call of his co-plaintiff or co-defendant, otherwise than as by law allowed, unless a nominal party merely." In an action against an executor, the plaintiffs were offered as witnesses upon their own call, to testify in rebuttal as to what had been said by them in certain conversations had with witnesses who had testified to such conversations on behalf of the defendant. These conversations related to the subject-matter of the suit, and

had been given in evidence to show upon what terms and conditions a certain quantity of fertilizer had been furnished by the plaintiffs to the defendant's testator in his life-time. One of the plaintiffs was also called on behalf of the plaintiffs to prove from a letter book in his own handwriting, a copy of a letter addressed by the plaintiffs to the defendant's testator; and notice having been given to the defendant to produce the original, which was not produced, the offer was to prove by this party that the letter had been sent to the defendant's testator on the day of its date, and by the same train that carried the fertilizer. On objection it was HELD:

1st. That the plaintiffs would not have been competent witnesses for themselves at the common law to testify to the above facts, and the statute had not removed the incompetency in cases circumstanced as the present.

2nd. That the other party to the contract being dead, the plaintiffs were not competent witnesses to prove for themselves the sale and delivery of the fertilizer, and the terms upon which such sale was made; nor were they competent to disprove the special terms of such sale and delivery, as shown in defence on the part of the defendant.

3rd. That the evidence offered as above was inadmissible.

APPEAL from the Circuit Court for Dorchester County.

The case is stated in the opinion of the Court.

The *First, Second, Third, Fourth,* and *Seventh Exceptions* are stated in the opinion of the Court.

The *Fifth* and *Sixth Exceptions* were abandoned.

The *Eighth Exception.*—At the trial the plaintiffs offered the three following prayers:

1. That if the jury believe from the evidence that Samuel L. Webster and Noah Webster were in the year 1889 partners, under the name of S. L. Webster & Son, engaged in the manufacture and sale of fertilizers, and that on the 30th day of April, in said year, they shipped twelve tons of fertilizer upon an order addressed to them in their firm name, on the preceding day by John L.

Wrightson, in his life-time, and that the said Wrightson received and used the said fertilizer, then that the said Wrightson was bound to pay to the said firm the market value of the same, and the verdict of the jury must be for the plaintiffs, unless they further believe from the evidence that the said Wrightson purchased and received the said fertilizer upon other terms made with Samuel L. Webster, and assented to and acted upon by said firm, which terms must be proved and established by a preponderance of evidence.

2. That if the jury believe from the evidence that the fertilizer which the said John L. Wrightson agreed to purchase of said plaintiffs, was of the value of $50.00 or upwards, then there is no legal evidence in the case to prove any valid contract or agreement for the purchase of the same in consideration of the indebtedness of John B. Webster to the said Wrightson, and the jury cannot find or presume the existence or validity of any such contract, or that the said fertilizer was delivered in pursuance thereof.

3. That if the jury believe from the evidence that Noah Webster, one of the firm of S. L. Webster & Son, the plaintiffs in this action, presented the claim, which is the cause of action in this case, to Edward W. Le Compte, executor of John L. Wrightson, deceased, the defendant, and requested payment of the same, and that the defendant promised to pay the same if the said Noah Webster would have it proved and passed, and that thereupon the said Noah Webster did prove the said claim and have it passed by the Orphans' Court, that then the defendant is bound to pay the same; and the jury must find a verdict for the plaintiffs.

The defendant offered the following prayer:

That if the jury believe from the evidence that John B. Webster, son of Samuel L. Webster, was indebted unto defendant's testator, John L. Wrightson, in the

sum of $500, or in any sum or amount equal to plaintiffs' alleged claim, and that Samuel L. Webster did propose and agree to pay defendant's testator the amount of his said son John's indebtedness in fertilizer, at cash prices, and said John L. Wrightson did accept said proposition of the said Samuel L. Webster, and that the said John L. Wrightson, in pursuance of said arrangement, did give an order to the plaintiffs, namely, Samuel L. Webster and Noah Webster, under the firm name of S. L. Webster & Son, to deliver said guano to the said Wrightson, and that said firm, with a knowledge of the terms of said arrangement, did deliver said guano to said Wrightson, such delivery with such knowledge was in law an assent thereto and their verdict must be for defendant.

The Court (GOLDSBOROUGH and HOLLAND, J.) granted the first prayer of the plaintiffs and rejected their second and third prayers; and granted the prayer of the defendant. The plaintiffs excepted, and the verdict and judgment being against them, appealed.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, BRYAN, FOWLER, McSHERRY, and BRISCOE, J.

*Daniel M. Henry*, and *Charles Marshall*, (with whom was *John G. Mills*, on the brief,) for the appellants.

*James Higgins*, and *Henry Lloyd*, for the appellee.

ALVEY, C. J., delivered the opinion of the Court.

This action was brought by Samuel L. and Noah Webster, partners, trading under the firm name of S. L. Webster and Son, who are the appellants here, against Ed. W. Le Compte, executor of John L. Wrightson, deceased, to recover a claim for fertilizer furnished to the defendant's testator in his life-time. The case

was tried upon issue joined on the pleas of never indebted and payment.

The plaintiffs proved the delivery of the fertilizer and the price thereof as charged; but the defendant introduced proof to show, and succeeded in showing to the satisfaction of the jury, that John B. Webster, a son of Samuel L. Webster, one of the plaintiffs, was indebted to the defendant's testator, Wrightson, on a note amounting to about $500; that John B. Webster failed in business, and became an applicant for the benefit of the insolvent law,—the note due Wrightson remaining unpaid;—and that subsequently Samuel L. Webster, the father and one of the plaintiffs, proposed to sell and deliver, and did sell and deliver, with the consent of his partner, to the defendant's testator a certain quantity of fertilizer, upon the understanding and agreement that the price of the fertilizer so furnished should be applied in part payment of the note of the son. All the contested questions presented on this appeal arose in respect to this defence set up by the defendant. Several exceptions were taken by the plaintiffs, some to the rulings upon the admissibility of evidence, and others to the rulings on prayers.

1. The plaintiffs having given evidence in support of their case, rested; and the defendant then offered to prove by Dr. Jones, that upon one occasion, in the spring of 1889, when visiting Wrightson as a physician, he was requested by Wrightson "to deliver a message to Samuel L. Webster, requesting him to deliver to said Wrightson some fertilizer, *according to the understanding between them;* that he delivered the message; but that Wrightson did not tell witness what the terms of the understanding referred to were, nor did the witness know what such terms were." This evidence was objected to by the plaintiffs, but was admitted by the Court; and this ruling forms the subject of the first exception.

We can perceive no error in this ruling. The evidence was admissible as tending to prove the fact that there was a previous understanding between the parties in regard to the fertilizer to be delivered; and though the witness could not speak of the terms of the understanding, it was certainly competent to prove by him the single fact that there was an understanding between the parties upon the subject, the terms of which might be proved by other witnesses; and such proof appears to have been given.

2. In the second exception is stated the testimony of several witnesses to show, by the declarations and admissions of Samuel L. Webster, upon what terms the fertilizer was sold and delivered to Wrightson. This proof was to the effect, that Samuel L. Webster had offered to and agreed with Wrightson, and others, to deliver to them fertilizers, at cash prices, in payment of his son's debts. And it was also proved by one of the witnesses, that in a conversation had with Noah Webster, the partner and co-plaintiff of the father Samuel L. Webster, Noah asked witness "why Mr. Wrightson was getting so much fertilizer; that his father had sold him a big bill; that John's debt to Wrightson was to be paid in fertilizer, and that his father had agreed to pay him (Noah) his share."

The evidence given by the several witnesses, whose testimony is set out in this exception, was objected to by the plaintiffs, upon the ground that such testimony was in contravention of the Statute of Frauds, and should therefore be excluded from the jury. But the Court overruled the objection, and refused to withdraw the evidence from the jury. The questions raised by the second prayer of the plaintiffs, which was rejected by the Court, and by the single prayer of the defendant, which was granted, embraced in the eighth exception by the plaintiffs, are substantially the same as that presented by this

second exception to the admissibility of evidence; and the propositions so made may be considered together as one.

By the plaintiffs' second prayer, the Court was asked to instruct the jury that there was no legal evidence in the case to prove any *valid contract or agreement* for the purchase of the fertilizer in consideration of the indebtedness of John B. Webster to Wrightson; and the jury could not find or presume that the fertilizer was delivered and accepted in pursuance of any such agreement. And by the prayer of the defendant, the jury were instructed, that if Samuel L. Webster, the father, did propose and agree to pay Wrightson the amount of his son John's indebtedness in fertilizer, at cash prices, and Wrightson accepted the proposition, and ordered the fertilizer in pursuance of the arrangement, and the fertilizer was delivered on such order, by the firm of S. L. Webster & Son, with the knowledge of and acquiescence in the arrangement, by Noah Webster, the son and co-partner of Samuel L., then the verdict should be for the defendant. And the verdict was rendered accordingly.

While it is stated in the evidence that John B. Webster had become insolvent, and mention is made of his insolvent proceedings, it is no where stated, nor do the prayers propounded to the Court require the jury to find, that he had been finally discharged under the insolvent law, at the time when Samuel L. Webster agreed with Wrightson to pay the debt due the latter with fertilizer. But assuming that the son had been finally discharged under the insolvent law, as may be presumed from the circumstances stated, the debt due Wrightson was not thereby so absolutely extinguished as to be of no value whatever to the creditor. It was still subject to be revived by a new promise of the debtor. For it is well settled that a promise by a debtor, after his discharge under a bankrupt or insolvent law, to pay a prior debt,

waives the discharge, and the debt is a sufficient consideration for the new promise. *Yates' Adm'rs vs. Hollingsworth,* 5 *H. & J.*, 216; *Baltimore and Ohio Railroad Co. vs. Clark,* 19 *Md.*, 522; *Knight vs. House,* 29 *Md.*, 200. And as the debt forms a basis for a promise to pay by the debtor, it equally forms a consideration for a promise to pay by a third party, whereby the debt is to be extinguished and finally discharged.

The contention of the plaintiffs is, that the Statute of Frauds is applicable to the alleged assumption of the debt of the son by the father, and as such assumption was not in writing, the agreement was void, and therefore could not be set up by the defendant as a defence to the action for the price of the fertilizer furnished. Whether this contention be well founded or not, is the principal question in the case.

The Statute of Frauds, section 4, declares that no action shall be brought, whereby to charge the defendant upon any special promise to answer for the debt, default, or miscarriage of another, *unless the agreement upon which such action shall be brought,* or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorised. It has long been the settled construction of this clause of the fourth section of the Statute, that it does not apply to a case like the present. If the original debt be *discharged and extinguished* by the substitution in lieu thereof of a new contract or assumption by a third person to pay the amount of that debt, such new contract or assumption is not *a collateral* promise to answer for the debt or default of another, within the meaning of the provision of the Statute. Illustrations of this construction are numerous. As, for instance, where the defendant promised to pay the debt of his son, who was in custody on execution at the suit of the plaintiff, in consideration of his son's being dis-

charged out of custody with the plaintiff's consent, it was held that the promise was not within the statute, *because by such discharge from prison the debt of the son was extinguished.* Goodman *vs.* Chase, 1 *B. & Ald.*, 297. The same principle was adopted in the case of *Lane vs. Burghart,* 1 *Q. B.*, 933. And in the case of *Curtis vs. Brown,* 5 *Cush.*, 488, SHAW, C. J., said that when, by the new promise, the old debt is extinguished, the promise is not within the Statute; it is not then a promise to pay the debt of another, which has accrued, but it is an original contract, on good consideration, and need not be in writing. See 2 *Pars. on Contr.*, (4th ed.) 304.

Here, by legal operation of the delivery and acceptance of the fertilizer under the agreement between Samuel L. Webster and Wrightson, the debt due the latter from John B. Webster was discharged and extinguished *pro tanto.* The contract was thereby performed on both sides. And now the defendant is not seeking to enforce the agreement as an executory contract, but seeks simply to avail himself of the executed contract to defeat the right of the plaintiffs to recover upon a *quantum meruit,* or *quantum valebat,* as upon an implied promise arising upon the delivery to and receipt of the fertilizer by his testator. And such being the case, even if the agreement between Samuel L. Webster and Wrightson had been, while executory, within the Statute of Frauds, as contended by the plaintiffs, the subsequent execution of that agreement withdrew it from the operation of the Statute, and the Statute would thence have no effect upon the contract whatever. For as said by this Court, in *Crane vs. Gough,* 4 *Md.*, 333, when speaking of the effect of the fourth section of the Statute of Frauds upon contracts embraced within its provisions, "If they (the contracts) be *fulfilled and executed* they are just as valid as though they had been in writing; and the rights and property acquired under them are just as sacred and

as much respected as if they had been evidenced by a writing signed by the parties." And again: "The Statute provides, that no action shall be sustained upon certain contracts, unless they are evidenced by writing. It operates therefore upon the contract *only while it is executory.* It does not make the performance of such contracts unlawful, but, if the parties choose to perform it, the contract remains in full force notwithstanding the Statute, so far as relates to the legal effect and consequences of what has been done under it. Hence a party may always defend under such a contract, when sued for any act done under it." Therefore, in no aspect of the case, can the Statute of Frauds be invoked as affording the plaintiffs ground of objection to the defence made to the recovery of their claim. And that being so, it follows that the Court below was clearly right in overruling the objection to the testimony of the witnesses as set out in the second exception, and in rejecting the second prayer offered by the plaintiffs; and it was also right in granting the prayer offered by the defendant.

There was no error in rejecting the plaintiffs' third prayer. It entirely ignored the fact in proof that the only admission or promise of the defendant, in regard to the payment of the claim, was made by him before he had obtained letters testamentary on the estate of the deceased. At that time, he had no such interest in the subject-matter of the suit as would render his admissions or promises binding upon the estate, or those interested in its administration. The principle is well established that the admissions of an *executor* or *administrator*, made before he is completely clothed with the trust, cannot be received against himself as the representative of the estate, or to bind legatees, distributees or creditors. 1 *Greenl. Ev., sec.* 179; *Dent's Adm'x vs. Dent,* 3 *Gill,* 482; *Mangun vs. Webster,* 7 *Gill,* 78. But apart from this objection to the prayer, it sought to have the

jury instructed in positive and unqualified terms, that if the defendant had promised to pay the claim, upon being passed by the Orphans' Court, he was bound by such promise, and the plaintiffs were entitled to recover. Such an instruction, to say the least of it, would have been very misleading to the jury;· and it was for that reason, if there had been no other, properly refused. But an admission or promise by an executor or administrator is not under all circumstances to be regarded as binding and conclusive as against the estate. For though an executor or administrator may recognize a claim as proper to be paid, yet if he afterwards discovers that the claim has no legal foundation, or that it is such as ought not of right and in justice to be charged upon the estate represented by him, no previous recognition or admission by him ought to or can preclude him from making the proper defence, and with the same effect as if no such previous recognition or admission had occurred. This plain principle of right and justice is fully recognized . by this Court in the case of *Miller, Adm'r vs. Dorsey,* 9 *Md.,* 317, 323; and applying it here, the Court below could not do otherwise than reject this third prayer of the plaintiffs.

The only other questions remaining to be considered are those presented by the third, fourth and seventh bills of exception, in respect to the competency of the plaintiffs to testify in their own behalf, and which questions were decided adversely to the plaintiffs.

By the third and fourth exceptions, it appears that both of the plaintiffs were offered as witnesses, upon their own call, to testify in rebuttal, as to what had been said by them in certain conversations had with witnesses who had testified to such conversations on behalf of the defendant. These conversations related to the subject-matter of the suit, and had been given in evidence on behalf of the defendant to show upon what terms and

conditions the fertilizer had been furnished to Wright-son in his life-time. And by the seventh exception it appears, that Noah Webster, one of the plaintiffs, was called on behalf of the plaintiffs, to prove from a letter book in his own handwriting, a copy of a letter addressed by the plaintiffs to Wrightson, of date the 30th of April, 1889; and notice having been given to the defendant to produce the original, which was not produced, the offer was to prove by this party that the letter had been sent to Wrightson on the day of its date, and by the same train that carried the fertilizer. But, upon objection being made by the defendant to these offers by the plaintiffs, upon the ground of the incompetency of the plaintiffs to testify to the facts proposed to be proved by themselves, the Court sustained the objections, and excluded the plaintiffs as witnesses.

The questions presented by these three bills of exception are nearly identical, and are dependent for their determination upon a single clause in the statute relating to the competency of parties to testify in their own behalf. The statute provides that when an original party to a contract or cause of action is dead, or when an executor or administrator is a party to the suit or action, either party may be called as a witness *by his opponent, but shall not be admitted to testify on his own offer, or upon the call of his co-plaintiff or co-defendant,* otherwise than now by law allowed, ùnless a nominal party merely. Code, Art. 35, sec. 2. It is very clear that the plaintiffs would not have been competent witnesses for themselves at the common law, to testify to the facts stated in these exceptions, and the statute has not removed the incompetency in cases circumstanced as the present. The other party to the contract being dead, the plaintiffs were not competent witnesses to prove for themselves the sale and delivery of the fertilizer, and the terms upon which such sale was made; nor were they competent to disprove the

special terms of such sale and delivery, as shown in defence on the part of the defendant; but this was what was proposed to be done by the proof offered to be given by the plaintiffs themselves. The terms of the statute are plain and imperative, and leave no room for doubt as to their meaning. The Court was clearly right in its rulings as stated in these three exceptions.

Finding no error, the judgment must be affirmed.

*Judgment affirmed.*